# Foster's Appeal.

| 87 | 67 |
|---|---|
| 140 | 249 |
| 87 | 67 |
| 213 | ¹529 |

1. Where it is shown that the will of a testator was in existence unrevoked at the time of his death and was afterwards lost or destroyed, its contents may be proved by parol and the will as thus reproduced admitted to probate.

2. Where it is shown that the testator always had his will in his custody, and after his death it could not be found, the presumption is that he destroyed it *animo revocandi;* but such presumption may be removed by sufficient evidence.

3. Whenever a dispute arises upon a matter of fact before a Register's Court, the right to an issue is undoubted, but the demand therefor must be made in due time and where it was not made until after a report by an examiner, a hearing by the court and a motion for a re-argument, it was not error for the court to refuse an issue.

April 5th 1878.    Before AGNEW, C. J., SHARSWOOD, MERCUR GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Appeal from the decree of the Orphans' Court of *Wayne county:* Of January Term 1878, No. 78.

The facts were as follows : Isaac P. Foster died on November 18th 1876.    On December 7th 1876, the two sons of decedent, William H. and Isaac N. Foster, and his attorney, Charles S. Minor, appeared before the register of wills of Wayne county, and alleging that the will of said decedent had been lost, exhibited a paper which had been reproduced from notes of instruction given to said Minor by decedent, from which said lost will had been drawn, and asked that said paper as thus reproduced should be admitted to probate.    The register admitted the paper to probate as the will of said decedent, whereupon several of his children appealed to the Orphans' Court.    An examiner was appointed by said court, before whom Minor testified that he had drawn six wills for decedent, dated respectively in 1861, 1862, 1865, 1867, 1870 and 1875; that decedent came to him with his first will in 1860, and that whenever a new will was drawn the old one was always left with witness and was never cancelled until after the new one was executed ; that decedent had frequently stated to witness that it was his wish to make a disposition of his property by will for the reason that two of his sons had assisted him in acquiring it ; that the reproduced will was made up from memoranda in the handwriting of the decedent, and from which his last will had been drawn.

William H. Foster testified that he had a talk with his father about the existence of a will during the last week of his life, in which he expressed a desire to have a change made therein concerning the substitution of money for certain bonds which testator had given to his daughters; that in another conversation, in speaking to witness about his will his father had said: "Mr. Minor knows all about it; you will find everything pertaining to my estate in the lower drawer of the secretary in my bed-room ; I wish these papers to pass into your hands."    Witness had known previously to

[Foster's Appeal.]

that time where his father had kept his last will; had shown him where he kept it; was in the lower secretary drawer at the right hand end; when his father showed it to witness he took out a large envelope and said it contained his last will; it was endorsed "The last will and testament of Isaac P. Foster," in the handwriting of Mr. Minor; he replaced the envelope in the drawer; always kept that drawer locked, but the upper one was left unlocked, and by drawing it out the contents of the lower drawer could be removed; after his father's death a careful search was made through the drawer and in every conceivable place where the will would likely have been put, but it could not be found.

Isaac N. Foster testified: "I saw father on Wednesday preceding his death, about noon. I took a seat near his bed and he commenced talking about his business matters. He began the conversation in this way: 'I don't know as you know that I have paid that $1200 note. You know what note I mean.' I answered I did, and mentioned the note. 'You mean the Isaac Ward note.' Father said, 'As my will is, I don't know but what William can lay claim to that note. I don't want him to do it, and don't think he will.' I replied to him that we had better see William. He then said that he wanted to see Mr. Minor, William and myself together. 'Mr. Minor knows all about my matters and wishes, and in my will I have left him sole arbitrator of all matters of differences.' Father was at this time suffering a good deal of pain; he was physically weak; his mind was active and good, no doubt about it; he was undressed and in bed. I was there in the neighborhood of an hour.

"Previous to this, had learned from father that he had made a will; he was in a sort of a stupor from Thursday until his death on the Saturday following."

Other witnesses testified to the feeble condition of the decedent during the week previous to his death, and to his inability to leave the room. The subscribing witnesses also testified to the execution of the will.

The case was argued before the Orphans' Court and subsequently a petition for a re-argument was granted. Accompanying the petition was a request for a *præcipe* for an issue to the Common Pleas to try the disputed facts.

In an opinion the court, Waller, P. J., inter alia, said:—

" The first inquiry arising in the case is, whether, under the evidence reported by the examiner, any disputed facts material to the issue are disclosed, which render it necessary to certify the case to the Common Pleas to obtain the finding of a jury as auxiliary to the court in passing upon the questions presented by the papers and argument. The granting of an issue of fact is not a matter of right, but rests in the sound discretion of the court, and, unless the evidence is contradictory upon material points, it is clearly the duty of the court, taking into consideration the delay and expense attending

it, to refuse such issue: Commonwealth *v.* Bunn, 21 P. F. Smith 412; Graham's Appeal, 11 Id. 45, and Wikoff's Appeal, 3 Harris 281.    There are disclosed by the evidence some contradictions of witnesses, but it does not seem to us that they are upon material points, but are different recollections of conversations which were had after the death of decedent and after probate of the paper, rather than facts which would materially affect the real questions presented in the case.    We therefore conclude that a reference to a jury is unnecessary.    The fact, that Isaac P. Foster made a will on or about the 5th of June 1875, which was written by C. S. Minor, Esq., under the instructions of the testator, mainly in writing, is established and not controverted by the evidence. Decedent died at his own house, surrounded by his family, on the 18th day of November 1876, after an illness of less than a week. The will had been delivered to or left with the testator by Mr. Minor, at the time of his execution of it.    After his death diligent search for the will was made by various members of his family, but no will was found.    These facts raise a presumption, that the testator destroyed his will *animo revocandi:* Greenl. on Evidence 688 and note; 1 Redfield on Wills 331; Jarman on Wills 231, and 2 American Leading Cases 510, with authorities there cited.    This cast the burden upon the proponents of rebutting the presumption by sufficient evidence.    This presumption may be rebutted by such evidence as produces a moral conviction to the contrary: Davis *v.* Davis, 2 Add. 226; Minkler *v.* Minkler, 14 Vt. 125, and 1 Redfield on Wills 329.

" Proponents rely chiefly upon the acts and declarations of the testator for several years preceding and down to within a few hours of his death to repel this presumption.    Acts and declarations of a testator are admissible to repel the presumption that he destroyed his will *animo revocandi:* Jones *v.* Murphy, 8 W. & S. 275; Youndt *v.* Youndt, 3 Grant 140; Havard *v.* Davis, 2 Binn. 406; Davis *v.* Davis, *supra,* and Minkler *v.* Minkler, *supra.*    It is well settled that declarations of a testator as to the contents of his will, or the testamentary disposition of his property and estate, are of little weight as against a will proven or to establish the contents of a lost will.    Especially where, as is generally the case, the declarations are made to importuning or complaining relatives.    But these are to to be distinguished, we think, from the acts and declarations of a testator tending to show and showing his conviction and understanding, that he has a will in existence at the time of his decease.    If the will was destroyed or lost without the agency of the testator, it does not cease to be his will, provided its contents can be sufficiently proven.

"It appears from the evidence, that for many years Isaac P. Foster had been careful not to be without a will.    That he made some seven wills, the last of which was in June 1875, and whenever he

[Foster's Appeal.]

desired a new will drawn he produced the preceding one, and directed the particular changes he desired.    That he assigned to Mr. Minor, his counsel, at times of making his wills as a reason for having a will, ' that an equal distribution among his children would be a most unjust thing, as William and Isaac had helped acquire the property, &c., and that the joint earnings remained in his hands, and that he held it in trust for them.'

" The agreement of several of the heirs, after their father's death, in writing, requesting Mr. Minor to reproduce the will, is based upon the understanding that testator had a will at the time of his death, and that the same could not be found and is so expressed.    That the death of Horace Weston, a son-in-law, rendered a change in his will necessary, and as in former cases, he produced the will of 1870, and instructed Mr. Minor to draw a new one, making such changes as the altered circumstances of his family appeared to him to require. That he made provisions in his will for his granddaughter, Harriet J. Weston, who for some six or seven years had waited upon and taken care of himself and an infirm and enfeebled grandmother, and without such will this granddaughter would have no portion of his estate.    That he said to his son-in-law, Luther M. Chase, in September 1875, in speaking of what he had theretofore done for Mrs. Chase, his daughter, ' that he didn't know as he could do more for ' the girls' than he had already named or provided to be done in his will.'    That in the early summer of 1876, he spoke to Mr. Minor of a change he wished to make in his will to provide for payment by his executors of moneys instead of some railroad bonds he had left them in his will.    That October 12th 1876, a month or so before his death, he spoke to Mr. Minor on the same subject, and when advised that a codicil would be sufficieut for that, said to him ' that when he felt able he would call and have it done,' and if he should die without doing it, he instructed Mr. Minor to see that his executors did as he desired in that matter.    That he, at different times, spoke to William H. Foster, his executor, upon the same subject, and enjoined it upon him to carry out his wishes in that particular.

" That he spoke to his daughter, Mrs. Ward, about a fortnight before his death, saying that he didn't know as he had done right in sending money to Mrs. West, another daughter, for the education of her child; he thought he ought to have left it for her under his will, and that the amount, $200, was to be taken out of her portion in his will.    That he spoke to William and Isaac as to his son James and the provision of his will.    Told Isaac that James wanted him to release liens he had on James's property in Ohio, but he didn't want to do it, as it would oblige him to re-write his will.    That he expressed a desire to have Mr. Minor, William and Isaac come to his room with reference to the change he had spoken of with reference to the railroad bonds to the girls.    This was the

last day he was conscious. That the same day he talked with Isaac about his will; said to him that he didn't know but William might, under his will, lay claim to a note of $1200 against Isaac Ward, but he didn't want him to collect it, but hand it over to Mrs. Ward. That the same day, and after the conversation with Isaac, he said to William that it was no matter about having Mr. Minor come up, he had seen Isaac and it was all right; Mr. Minor understood all about it. He told Isaac that he had made Mr. Minor sole arbitrator in his will to settle any disputes. After talking with William about his will, the last day that he was conscious, he told him that he would find all the papers relating to his estate in the lower secretary drawer, and wished them to come into his hands as one of his executors. It is also in evidence that from Monday morning until he died, on Saturday, he was not able to leave his bed without help. That he informed William and Isaac that he would leave James's matters to them as his executors, to dispose of as they thought best.

" Contestants argue these and other circumstances brought out in the evidence, are not sufficient to rebut the presumption of a destruction of the will by the testator *animo revocandi.* That by reason of advanced years and failing memory he might have destroyed his will and forgotten all about it, and in his senility have talked of it as an existing instrument. In support of this theory, they have shown a single instance of having forgotten that Josiah, his son, had taken some bonds to the bank for safe-keeping. They furnish no positive or circumstantial evidence of the destruction of the will or of its cancellation in any of the modes prescribed by Act of Assembly, by the testator. It appears from the evidence and is uncontradicted that testator retained his mental faculties up to Thursday morning before his death, and it is also made apparent from his conversations with his children and the attention he gave to matters relating to his estate to the Thursday morning before he died. These facts and circumstances lead us to conclude the testator died with the full conviction and belief that he had a will that would be operative at his death, and render it highly improbable that he should have destroyed it. We therefore come to the conclusion that the presumption of destruction of the will by the testator, *animo revocandi,* is repelled by competent and sufficient evidence.

" The next question presenting itself is, can the contents of a lost or missing will be admitted to probate? This question has never, so far as our researches go, been settled by any court in Pennsylvania.

" It is, however, a well-settled rule of law in this state that lost bonds, deeds, depositories, records, &c., may be proven, and when the loss is properly established, the contents of the lost instrument may be given in evidence. It has also been held here that the con-

tents of a lost will may be given in evidence in ejectment. In Havend *v.* Davis, 2 Binn. 417, before cited, TILGHMAN, C. J., where the question was raised in the court below and ruled against the proof of contents, reversed the court below on the ground that the parol proof of the contents of the will was improperly rejected. That was an issue from the Register's Court to try whether a certain paper writing was a last will or not. By a reference to 1 Jarman on Wills 231; 1 Redfield on Wills 329; 1 Williams on Executors 322, note; 3 Redfield on Wills 17, note; Clark *v.* Wright 3 Pick. 67; Betts *v.* Jackson, 6 Wend. 173; Dickey *v.* Malachi, 6 Mo. 183; Davis *v.* Davis, *supra*, and Minkler *v.* Minkler, *supra*, it seems to be very well settled that the contents of a lost will may be admitted to probate, provided they can be established by competent testimony. But before this may be done it must appear affirmatively:

"1. That such will had been duly executed, and that testator was of disposing or testamentary capacity.

"2. That the will cannot be found after diligent and thorough search subsequently to the death of the testator.

"3. That it has not been revoked by the testator.

"4. That the contents of such will are correctly proven.

"It may be here remarked that the allegation of undue influence in the making of the will, is not sustained by a particle of evidence, and is therefore dismissed.

"Now applying the foregoing rules. 1st, it is established by the evidence of C. S. Minor, B. B. Smith and John Brown, that on or about the 5th of June 1875, the testator executed a paper, which he declared as and for his last will and testament, in their presence, and to which, at his request they affixed their names as subscribing witnesses. They further testify to his testamentary capacity. 2d. It is conclusively established, and not denied, by the evidence of the executors and others, some of the contestants included, that thorough and exhaustive search was made for the will shortly after the death of decedent and that it could not be found. 3d. This point is disposed of in a preceding portion of this opinion. 4th. The contents of the will of June 5th 1875, is sufficiently and legally established by the evidence of Chas. S. Minor, Mrs. N. P. Minor, and the memoranda furnished by the testator to Mr. Minor for the drawing of the will; copies of which are attached by the register to the reproduction of the will as probated by him.

"Mr. Minor testifies that the reproduced will is substantially, accurately, and almost verbally a copy of the will of June 5th 1875, which was in his handwriting, as shown by him and by B. B. Smith, a subscribing witness; and is sustained by the evidence of Mrs. Minor, who had before her the will of 1870, the notes of the testator as furnished to her husband, and who read and compared for and with her husband as the will was written. We have then a copy of that will established, not by the unaided memory of one

[Foster's Appeal.]

witness as to its contents, or the defective memory of mere sub-
scribing witnesses who might have heard it read; but by the evi-
dence of the testator's trusted and familiar attorney, who had been
intimate with testator and cognisant of his affairs for many years,
and had prepared for him some six wills, each succeeding will hav-
ing been compared with its predecessor, which was duly preserved
until the succeeding will was executed, by the written memoranda
of testator given in evidence, and by Mrs. Minor, who was familiar
with the wills of testator and designates the paper probated as an
exact copy of the will.

"Under all these circumstances, and adopting the will as laid
down by Redfield, J. (author of Redfield on Wills), in Minkler v.
Minkler, 14 Vt. 125, cited above, we think appellants have failed
in point of law and fact to sustain the appeal.

"We therefore adjudge and decree that the paper writing admitted
to probate by the register of wills, as and for the last will and tes-
tament of Isaac P. Foster, deceased, is established by sufficient
and competent proof.

"The appeal is therefore dismissed, and it is adjudged and decreed
that the probate of the register of wills be affirmed."

*J. M. Moyer, George J. Purdy* and *F. Carroll Brewster*, for
appellants.—The Act of 15th March 1832, § 41, Purd. Dig. 1256,
pl. 22, provides that whenever a dispute upon a matter of fact arises
before a register's court, the said court shall, at the request of either
party, grant an issue; this act is mandatory, and allows no discre-
tion: De Haven's Appeal, 24 P. F. Smith 337; Wickersham's
Appeal, Id. 336.

A testator having taken his will into his custody, if it cannot be
found after his death, the presumption is that he destroyed it:
Wharran v. Wharran, 33 L. J. P. 75; Keen v. Keen, 42 Id. 61;
Johnson v. Lyford, 37 Id. 65; Loxley v. Jackson, 3 Phillimore
128; Brown v. Brown, 8 Ellis & Bl. 875; Betts v. Jackson, 6
Wend. 173. In this latter case, the law upon the principles of this
case, both in England and this country, was elaborately set forth.

The authorities in Pennsylvania are equally strong upon the
same general principle. In order to make a will effective, it must
be shown to have been in existence at the testator's death; other-
wise it is not his will. Until his death, it can have no effect; he
retains full power and dominion over it, and he may either retain or
destroy it at pleasure, and in the absence of the corpus of the will,
the presumption is, that he has destroyed it himself, and no declara-
larations of intent, condition and circumstances of family are suffi-
cient to rebut the presumption. To this effect are the cases of
The Baptist Church v. Robbarts, in 2 Barr 110; Jones v. Murphy,
8 W. & S. 275; Clark v. Morton, 5 Rawle 235.

That there are instances in which the contents of a will may be estab-

lished by parol testimony is not controverted, but the rule holds only in cases where it is clearly shown that the will was lost or destroyed without the agency of the testator, as in the case of Clark *v.* Wright, 3 Pick. 67, where the codicil was fraudulently destroyed, in which case the court admitted parol proof of its contents. The case of Idley *v.* Bowen, 11 Wend. 227, is another illustration of the same rule. In that case the court said: "Where a will duly executed by the testator was destroyed in his lifetime without his authority," it might be established by parol proof. In Steele *v.* Price, 5 B. Monroe 68, where the testator was a man of dissipated habits, evidence was admitted to show loss or destruction from accidental causes for the purpose of rebutting the presumption that he intentionally revoked his will.

*H. M. Seely* and *George G. Waller*, for appellees.—1. If a will be lost, or destroyed otherwise than by the act of the testator, and satisfactory evidence of its execution and contents be offered, such contents will be admitted to probate: Trevelyan *v.* Trevelyan, 1 Phill. 149; Davis *v.* Davis, 2 Addams 226; Patten *v.* Poulton, 1 Swab. & Tris. 55; Clark *v.* Wright, 3 Pick. 67; Dickey *v.* Malechi, 6 Mo. 182; Dawson *v.* Elizabeth Smith's Will, 3 Houston 335; Minkler *v.* Minkler, 14 Vt. 125; Youndt *v.* Youndt, 3 Grant 140; Jackson *v.* Halloway, 7 Johns. 394.

2. The presumption of revocation of a will left in the custody of the testator and not found after his decease, is merely prima facie, and may be rebutted. Cases cited above, and Whiteley *v.* King, 17 C. B. N. S. 756; McBeth *v.* McBeth, 11 Ala. 596; Betts *v.* Jackson, 6 Wend. 187.

3. Declarations of the testator are admissible to rebut this presumption: Boudinot *v.* Bradford, 2 Dall. 266; Burns *v.* Burns, 4 S. & R. 297; Will of John Cooke, 10 Pa. L. J. 355; Wikoff's Appeal, 3 Harris 292; Havard *v.* Davis, 2 Binn. 425; Youndt *v.* Youndt, 3 Grant 140; Grant *v.* Grant, 1 Sand. Ch. R. 235; Johnson's Will, 40 Conn. 587; Durant *v.* Ashmore, 2 Rich. 184; Gaines *v.* New Orleans, 6 Wall. 659; Steele *v.* Price, 5 B. Mon. 68; Weeks *v.* McBeth, 14 Ala. 474; Goodlittle *v.* Otway, 2 H. Bl. 516; Welch *v.* Phillips, 1 Moore P. C. C. 302; Sugden *v.* Lord St. Leonards, Law Rep. 1 Probate Division 154.

4. The Orphans' Court are not bound to grant an issue unless such a conflict of evidence exists as would justify a verdict in favor of either party: Wikoff's Appeal, 3 Harris 289; De Haven's Appeal, 25 P. F. Smith 340; Graham's Appeal, 11 Id. 45; Cozzen's Will, Id. 201; Commonwealth *v.* Bunn, 21 P. F. Smith 412, 413; In re Will of Rebecca Colgate, 35 Legal Int. 90.

Chief Justice AGNEW delivered the opinion of the court, May 13th 1878.

[Foster's Appeal.

That Isaac P. Foster made and executed in due form of law a will in writing, on or about the 5th of June 1875, is an indisputable fact. That the contents of this will are clearly and fully proved, both by testimony and by written memoranda in the testator's own handwriting, is equally plain, and no question arises as to the number of witnesses, the contents being proved by two, as well as by the memoranda furnished by the testator himself. The will not being found after the testator's death and diligent search, two material questions arise upon the assignment of errors:

1. Whether the presumption of revocation by the testator himself is rebutted by the evidence.

2. Whether the contents can be proved by parol evidence.

There is ample evidence to rebut the presumption of a revocation by the testator. Many facts contribute to this result, among which these leading circumstances appear. Isaac P. Foster was never without a will for the last fifteen years of his life, having had seven written under the supervision of counsel and made necessary by the nature and amount of his estate, the number of his children, and advancements made to some, and those matters were often dwelt upon by himself. He, himself, regarded his will of 1875 as existing until and while lying on his death-bed, when too feeble to destroy it without assistance. Up to this time he made efforts to procure a codicil to alter the will in a certain aspect, made necessary by the failure in the payment of interest on certain bonds, but being prevented by the extremity of his last illness, died under a belief that he had arranged with his executors to pay these legatees money instead of the bonds. These and corroborating circumstances show that the testator had no thought of a revocation.

That the presumption of a personal revocation can be thus rebutted is shown by the authorities cited by the appellees. The presumption of revocation arises from the fact that the will was known to be in the possession of the testator himself, and that it cannot be found after his death. It is, therefore, a natural presumption merely, because it cannot be supposed the testator would part with it, unless he intended to put it out of the way, and because it is out of the way and cannot be accounted for, the presumption that he intended to revoke it arises. Like other natural presumptions drawn from evidence, and not declared *de jure*, for some legal end, it must give way to stronger evidence of the continued existence of the will, and the testator's reliance upon it as the disposition he had made of his property.

The will then being in existence at the death of the testator unrevoked by him, its or accidental destruction differs not from the loss or destruction of any other solemn instrument, such as a deed, a note or bond, or a record. The contents, therefore, may be proved in like manner, as shown by the authorities cited. It is a postulate of the question that the testator left behind him at death, a last will

[Foster's Appeal.]

in writing, legally executed and published; and unrevoked by any act or direction of his. That the law will not tolerate any making of a will for him by other means than his own act in writing duly executed, is clear. But such a will having a legal existence, yet accidentally lost or destroyed, the establishment of its contents is not the making of a new will, but a restoration merely of that which the testator himself made and left behind him to govern his estate. There is no greater sanctity, in this respect, than the restoration by parol evidence of other instruments equally solemn and having an equal effect in the disposition of property. The law simply comes in aid of his own legally performed act, to prevent his intentions from being frustrated or defrauded. The authorities upon the republication of wills, made before the passage of the Act of 1833, have a bearing and may therefore be cited—some not appearing in the paper-books: Havard *v.* Davis, 2 Binn. 406; Jones *v.* Hartley, 2 Whart. 103, citing many cases; Campbell *v.* Jamison, 8 Barr 498; Jack *v.* Shoenberger, 10 Harris 416; Fransen's Will, 2 Casey 203. We cannot perceive that the learned judge erred in ruling either point.

In regard to the right to an issue there is no difficulty. True, the right to a jury trial is given in the 41st section of the Act of 15th March 1832, relating to registers and registers' courts, whenever a dispute upon a matter of fact arises before any register's court; but the request for it must come in due time. Here no request was made, but the case was submitted to the judge of the Orphans' Court, was fully argued, and the papers were in his possession for an opinion and decree. On application for a re-argument he permitted it. But he did not re-open the case for all purposes. If, under the pretext of a request for a re-argument, it was intended to cover up an intention to force an issue and thus delay a cause already fully submitted to a competent tribunal, it was not such a request as the court was bound to regard. It was in the sound discretion of the court then to allow an issue or not. There was no abuse of its power in his refusal.

We discover no other matter worthy of serious notice.

The decree of the Orphans' Court is therefore affirmed, and the appeal of the appellants dismissed at their costs, which they are ordered to pay.