## Gelwicks Estate (No. 1)

*A. J. White Hutton* and *John A. Smarsh*, for petitioner.

*J. Stewart Glen, Jr.*, and *Edwin D. Strite*, for respondent.

PER CURIAM, August 6, 1953.—Anna K. B. Gelwicks died a resident of Franklin County on September 4, 1952. She was survived by no children or issue of deceased children. Her nearest kin are Sarah M. Croft and Jennie B. Bailey, sisters. Sarah M. Croft has a son, E. Ray Croft. On September 11, 1952, an alleged will of decedent, executed June 16, 1950, was presented for probate together with petition for letters testamentary by the Fidelity-Philadelphia Trust Company by William Gauer, trust officer. This will, after providing

for a cremation, burial, and a legacy of $3,000 to Carl Saltzman and Lizette Saltzman or the survivor of them, devised and bequeathed the remainder of the estate to the Shook Home for the Aged in Chambersburg, Pa., and appointed the Fidelity-Philadelphia Trust Company executor.

On September 16, 1952, E. Ray Croft, a resident of Franklin County, and, as stated, a nephew of decedent, filed a caveat against the probate of the alleged will of June 16, 1950. In the caveat he set forth that decedent had made a will on September 2, 1950, in which she revoked all former wills and testamentary papers, devised and bequeathed all of her estate to him and appointed him executor thereof, and prayed that the Register of Wills of Franklin County certify the entire record to the orphans' court of that county. On October 14, 1952, the register of wills certified the entire record to this orphans' court. Prior to the certification of the entire record, E. Ray Croft filed with the register of wills a petition for a citation to compel production of the original of the alleged will of September 2, 1950, and therein alleged that decedent had deposited the alleged will in safe deposit box no. 1121 in the Farmers and Merchants Trust Company of Chambersburg, Pa., in which were certain stocks, bonds, etc., of decedent, in the presence of E. Ray Croft and at that time delivered the two original keys of the deposit box to him and that he has had exclusive possession of such keys from that time to the present; that on September 9, 1952, E. Ray Croft with the register of wills went to the trust company and in the presence of its secretary and treasurer opened the deposit box which had formerly contained certain stocks, bonds and securities of petitioner and found it empty; that the stocks, bonds, securities, etc., were found to be in possession of the trust company and were produced by the secretary and treasurer thereof;

that petitioner believed that the stocks, bonds and securities were delivered to the trust company by T. Z. Minehart, an attorney of the Franklin County bar, and Jennie B. Bailey, sister of decedent; that petitioner believes that the will is or was in the possession of the trust company, Minehart and Bailey. Pursuant to such petition the register of wills issued a citation on the trust company, on Mr. Minehart and Mrs. Bailey to show cause why they should not separately or jointly deposit the alleged will dated September 2, 1950, with the register of wills. Answers were filed by the trust company and the other two parties cited, setting forth that they had no knowledge of the alleged will of Anna K. B. Gelwicks of September 2, 1950.

A petition was presented by E. Ray Croft to the orphans' court praying that a citation be issued upon the John Shook Home for the Aged, the legatees under the will, and the two sisters of decedent "to file a complete answer under oath to the averments of said petition showing cause why the alleged will of said decedent as offered for probate before the Register of Wills of Franklin County, Pennsylvania, and dated June 16, 1950, should not be declared null and void and revoked by the terms of the later will of the decedents, dated September 2, 1950".

Before considering the averments of this petition which have become very important, as will later appear, we call attention to the fact that the citation does not contemplate the probate of the alleged will dated September 2, 1950, but is only to show cause why the will of June 16, 1950, should not be declared null and void and revoked by such will. If the citation, prayed for, be made absolute there would be an intestacy and the only persons interested in case of intestacy are Sarah M. Croft and Jennie B. Bailey, sisters of decedent.

The petition for citation, presented to the court, alleges the application for probate of the will dated June 16, 1950, the filing of the caveat by E. Ray Croft and the other proceedings hereinbefore mentioned. So far as the alleged will of September 2, 1950, it is alleged in paragraph three of the petition as follows:

"On September 2, 1950, said decedent made a will whereby she specifically revoked all prior wills and wherein she gave her entire estate to your petitioner, E. Ray Croft, and appointed him executor. A copy of said will is attached hereto and is marked exhibit 1."

Attached to the petition, as exhibit 1, is a typewritten paper in the form of a will but no execution thereof either by decedent or by witnesses is shown by typewritten signatures or otherwise. This is very important, as will be seen later, for the petition itself does not allege any *execution* of the will of September 2, 1950, by decedent but merely uses the word "made" and refers to the copy of the will, which is in the form as stated. Further the petition in paragraph 7 thereof refers to the taking of the will of September 9, 1952, by decedent to the trust company and the happenings in reference to the deposit box and the opening thereof which have been hereinbefore referred to but they are not set forth as allegations of petitioner but merely appear as quotations from the petition filed with the register. Paragraph 7 sets forth: "That your petitioner filed with said register of wills a petition for citation to compel production of the original of the said will of September 2, 1950, wherein was set forth the following allegations as they appear and are quoted numerically from said petition":

This is followed by the quotation of seven paragraphs from the petition filed with the register of wills having to do with the deposit box in the bank, etc.

A citation was issued and answers filed by the John Shook Home for the Aged and by each of the two sis-

ters of decedent on December 16, 1952. The answer of Sarah M. Croft sets forth that she has no actual knowledge of the facts set forth in the petition in reference to the alleged will of September 2, 1950. The answer of Jennie B. Bailey states that she has no knowledge of the existence of the will of September 2, 1950, and cannot admit or deny any of the allegations contained with reference to the existence of such will. She further sets forth that she has already answered the allegations quoted in paragraph 7 and that she is not, by the present citation, required to answer them.

The John Shook Home for the Aged admitted the procedure alleged but denied that any will of September 2, 1950, as alleged ever existed and reserved "the right in any proper proceeding to introduce defenses to the validity of such alleged will should evidence of its existence be offered". As to quotations contained in paragraph 7, the answer set forth that it was not required by the present citation to answer such averments and it did not admit the truth to any of them. It further went on to set forth in paragraph 15 thereof: "That all of the facts set forth in the petition, if true, would be no cause for declaring null and void the will of decedent, offered for probate by Fidelity-Philadelphia Trust Company, said will being dated June 16, 1950."

Petitioner in its brief makes the following statement:

"All of the parts of the answer of the John Shook Home for the Aged controvert the fact of execution by the decedent of a will under date of September 2, 1950, but the paragraph 15 as above quoted has been stated by counsel for the home to the present counsel as being a form of demurrer to the entire petition under consideration, and it is upon that assumption that the present argument is presented for otherwise the facts as controverted must be found at a hearing as fixed

by the court and giving opportunity at such hearing by the respective parties to present the facts of the case."

This seems to be a clear statement of at least a tacit agreement on the part of petitioner to have the case argued as if a demurrer had been presented to the petition and there is no reason why, with the consent of petitioner, the case cannot be considered by the court in that manner and it is the feeling of the court that under the circumstances petitioner is bound by his statement and is not in a position to take advantage of Pa. R. C. P. 209. The court makes this statement because, although the effect of Pa. R. C. P. 209 and its interpretation in Price v. Jordon, 76 D. & C. 255, was not argued when this case was presented to the court, petitioner on the brief handed to the court refers to the rule and case and states that the attorney for respondent put the case down for argument. Further, during the argument the manner in which certain facts on which petitioner based his argument were set forth in the petition, were brought to petitioner's attention and petitioner was granted the right to amend his petition or file an amended petition within a reasonable time if he saw fit to do so. The case was argued on February 27, 1953, and on March 6, 1953, A. J. White Hutton and John A. Smarsh, counsel for petitioner, appeared at this court's chambers and stated they did not intend to amend the petition. It seems to this court that petitioner desires to take advantage of Pa. R. C. P. 209 on the ground that it applies in the orphans' court and that as the answer raises issues of fact, the action of respondent in putting the case down for argument when petitioner did not take depositions and respondent had not issued a rule on petitioner to do so the facts properly pleaded in the petition must be deemed to have been admitted. This is a different situation

than if the case is considered as on demurrer for there we only consider whether sufficient facts are alleged which, if properly proven, will sustain petitioner's contention, whereas, if Pa. R. C. P. 209 is applicable the facts properly alleged must be taken as admitted.

Because of the foregoing, we will consider whether or not Pa. R. C. P. 209 applies in the orphans' court. Rule 1, sec. 13, of the Orphans' Court Rules of the Supreme Court provides:

"Except where otherwise provided by a rule adopted by the Supreme Court or by an Act of Assembly, the pleading and practice shall conform to the pleading and practice in equity in the local Court of Common Pleas."

The Rules of Civil Procedure governing the action in equity which begin with Pa. R. C. P. 1501 and which became effective July 1, 1952, seem to apply generally, under the above rule, to the orphans' court.

Rule 1501, Conformity to Assumpsit, reads:

"Except as otherwise provided in this chapter, the procedure in an action in equity shall be in accordance with the rules relating to the action of assumpsit."

Under this rule appears:

"Note of the Procedural Rules Committee: In addition to the rules expressly regulating the action of assumpsit, rules 1001 to 1037, 1351 and 1361, the following rules apply to all actions at law and in equity."

There then follows quite a list of rules, among them "Business of court's rules 201 to 250"; and below the list of rules is printed:

"By Order of the Supreme Court effective as of the date of the adoption of these rules, the chapters of rules above marked with an asterisk which now apply only to actions at law have been extended to include actions in equity."

The words "Business of court's, rules 201 to 250" are not marked with an asterisk together with a number of other chapters of rules mentioned, all of which on inspection, already apply to actions in equity (see, for example, Pa. R. C. P. 250) and, therefore, there was no need for the Supreme Court to order that they be extended to include actions in equity. However, the Supreme Court by order filed May 22, 1939, provided that Pa. R. C. P. 201 to 250 do not apply to proceedings in the Orphans' Court.* As Pa. R. C. P. 201 to 250 applied to actions in equity prior to the enactment of the rules governing the action in equity but did not apply in the orphans' court, by reason of the order of the Supreme Court, it seems that the enactment of the rules governing the action in equity and which became applicable in the orphans' court generally by reason of Rule 1 of section 13 of the Orphans' Court Rules of the Supreme Court, did not revoke or annul the definite order of the Supreme Court providing that Pa. R. C. P. 209 to 250 do not apply in the orphans' court. We cannot see that any order of the Supreme Court made since the order of May 22, 1939, either directly or inferentially makes Pa. R. C. P. 201 to 250 applicable in the orphans' court. However, applying, generally, the rules governing the action in equity together with the numerous rules listed under the above-quoted "Note of the Procedural Rules Committee" in the orphans' court is rather confusing. In our opinion Pa. R. C. P. 209 does not apply in the orphans' court but if it does it would make no difference in our decision in this case as will hereafter appear.

The question raised by the petition is rather unusual and very restricted. Prayer of the petition is as follows:

---

* Goodrich-Amram, Binder I, Rule 201—Commentary, §201-1, and note 2.

"Wherefore, petitioner prays your Honorable Court to issue a citation upon the said John Shook Home for the Aged, Carl Salzman and Lizette Salzman, Sarah M. Croft and Jennie B. Bailey, being all of the parties in interest except your petitioner, to file a complete answer under oath to the averments of said petition showing cause why the alleged will of said decedent as offered for probate before the Register of Wills of Franklin County, Pennsylvania, and dated June 16, 1950, should not be declared null and void and revoked by the terms of the later will of said decedent dated September 2nd, 1950."

Petitioner's brief states the following:

"Under the present proceedings and on the petition as presented it is not contended that the will of September 2, 1950, is the subject of probate before the register of wills, but the sole question is, under all of the facts assumed in this argument, where a will revoking all prior wills is admitted to have been executed but the original cannot be produced and where under the facts an inference of fraudulent concealment can be drawn, may an admitted copy of such a will but not signed be offered in evidence as another writing for the sole purpose of revoking an existent prior will."

Here again we find petitioner contending that certain matters are admitted which could only occur if Pa. R. C. P. 209 applies.

The Wills Act of April 24, 1947, P. L. 89, sec. 5, 20 PS §180.5, provides:

"No will or codicil in writing, or any part thereof, can be revoked or altered otherwise than: (2) Other writing. By some other writing declaring the same, executed and proved in the manner required of wills."

This provision has the same effect as the provisions of section 20 (a) (b) of the Act of June 7, 1917, P. L. 403, 20 PS §§271, 272 (a), applying to real estate

and (b), applying to personal estate so far as revocation by another writing is concerned. As a result, cases decided under the Wills Act of 1917 are applicable under the Wills Act of 1947 so far as revocation of a will by another writing is concerned.

The Supreme Court in Koehler's Estate, 316 Pa. 321, citing Shetter's Estate, 303 Pa. 193, and Harrison's Estate, 316 Pa. 15, states on page 322:

"The court below correctly held that, under §20 of the Wills Act of 1917, P. L. 403, a will could not thus be annulled by parol testimony of an unproduced written revocation; that revocation could be established only by a writing produced, as was done in Ford's Est., 301 Pa. 183, where a copy of a subsequent will revoking an earlier one was properly proved and admitted in evidence, together with the fragments of a still later will which had been crumpled and torn by direction of decedent."

In Shetter's Estate, 303 Pa. 193, Mr. Justice Schaffer states on page 197:

"It cannot be shown by oral testimony alone that a will has been revoked. A writing declaring its revocation must be produced, signed by the decedent, before an earlier will can be rendered nugatory."

No doubt on the strength of the above decisions respondent felt that the allegations in the petition were insufficient as there was no allegation that any writing, revoking the will presented for probate, signed by testatrix, would or could be produced. The difficulty with this is that if it were properly alleged that such a paper had been executed, and nothing alleged, as there is not, that the paper was not available or could not be produced the petition might well be sufficient, further, if, under Pa. R. C. P. 209, the execution was admitted there would be no reason for offering any evidence or for producing the paper, the admission having been made that such a paper had been in exist-

ence. However, many of the facts deemed by petitioner, in his argument, to be admitted were in fact not properly pleaded and as a result cannot be considered.

The petition says decedent made a will dated September 2, 1950. Nowhere is there any allegation that decedent ever executed such a will or in what manner it was executed. The words "made a will" might very well mean the person drew up a paper as and for a will but never executed it or improperly executed it. The words "made a will" are not equivalent to "made a valid will" or allegations setting forth facts which constitute the existence of a valid will.

In Maginn's Estate, 278 Pa. 89, 91, we find:

"It is possible, in some cases, a 'decedent may have thought he had made a will, but the statute says he had not. The question is not one of his thought in that respect, but what he actually did, or . . . failed to do. . . . "It may happen [that] . . . wills truly expressing the intentions of the testators are made without observations of the required forms; whenever that happens, while the genuine intention is frustrated . . . the legislature . . . has thought it best, and has therefore determined, to run the risk of frustrating that intention . . ., in preference to the risk of giving effect to or facilitating the formation of spurious wills, by the absence of forms. . . . The evil of defeating the intention . . . is less than the evil probably to arise by giving validity to wills made without any form . . ."' or in derogation of testator's wishes, fraudulently imposing spurious wills on his estate: Churchill's Est., 260 Pa. 94, 101."

The Wills Act of April 24, 1947, P. L. 89, 20 PS §180.2 provides:

"Every will, except nuncupative wills but including wills of mariners and persons in the Armed Forces of the United States, shall be in writing and shall be

signed by the testator at the end thereof, subject to the following rules and exceptions:

"(1) Words following signature. The presence of any writing, after the signature to a will, whether written before or after its execution, shall not invalidate that which precedes the signature.

"(2) Signature by mark. If the testator is unable to sign his name for any reason, a will to which he makes his mark and to which his name is subscribed in his presence before or after he makes his mark, shall be as valid as though he had signed his name thereto: Provided, He makes his mark in the presence of two witnesses who sign their names to the will in his presence.

"(3) Signature by another. If the testator is unable to sign his name or to make his mark for any reason, a will to which his name is subscribed in his presence and by his express direction shall be as valid as though he had signed his name thereto: Provided, He declares the instrument to be his will in the presence of two witnesses who sign their names to it in his presence. 1947, April 24, P. L. 89, §2."

The allegations in the petition do not include facts which are necessary to make a will valid under any of the foregoing provisions. As Pa. R. C. P. 1001 to 1037 now apply in the orphans' court we must consider Pa. R. C. P. 1019 (a) which retains the verbatim language of section 5 of the Practice Act of May 14, 1915, P. L. 483, in providing:

"(a) The material facts on which a cause of action or defense is based shall be stated in a concise and summary form."

Under this rule it is said:

"However, it is a rule of unfailing application, and the rule is susceptible of no more definite statement, that when substantive law determines a given fact to

be essential to the existence of a right or wrong, then the pleader who seeks to enforce that right or wrong must state the fact in question in his pleading." 3 Standard Pa. Practice, 131, §28. The petition is the pleading in the matter before us on which petitioner bases his prayer.

The words "made a will" are clearly insufficient to establish the existence of a valid will when strangely there is no allegation of execution and the typewritten paper attached to the petition and referred to as a copy of the will, which was made, shows no execution by decedent and no witnesses as signers, although places are made and provided for such signatures and there is no explanation of such omissions. The petition fails to set forth facts which the substantive law determines to be essential to the right claimed. This absence of signatures in the so-called copy is mentioned in the answer of respondent in the following manner:

"Further answering the averments of this paragraph (paragraph 3 of the petition hereinbefore quoted) respondent respectfully shows your Honorable Court that exhibit 1 referred to in the petition is not on its face a complete will bearing the signature of neither testatrix nor witnesses."

The circumstances under which petitioner argues the will was placed in the deposit box of the trust company with stocks and bonds of decedent's and the failure to find any will or the stocks and bonds in the deposit box after decedent's death, although petitioner had in his possession both keys of the box, are not alleged in the petition at all but are merely quoted as part of a former petition filed with the register of wills. Certainly this is not any allegation of the facts set forth in the quotations. From it we can only go so far as finding that petitioner had filed a former petition alleging certain matters but we cannot consider such matters as they are not alleged in the peti-

tion now under consideration. Respondent so avers in its answer which is clearly correct.

The allegations of the petition are not sufficient to justify the granting of the prayer of the petition, whether we consider them as on demurrer or as admitted under Pa. R. C. P. 209.

Further a situation is presented which is rather important taking into consideration the prayer of the petition and the position assumed by petitioner at the argument. The result of the court's granting the prayer of the petition would create an intestacy and petitioner has no interest in the estate, if there is an intestacy. Can a person who has no interest, if an intestacy occurs, present a petition contesting a will offered for probate in a manner which necessarily must lead to intestacy if his contentions prevail? The Register of Wills Act of June 28, 1951, P. L. 638, in sections 110 through 112, which has to do with caveats and appeals, speaks continually of "a party in interest" which certainly contemplates that only a party having an interest in the estate if his contentions prevail can properly make and pursue such contentions.

No matter how we look at the situation, as it now presents itself, the petition must be dismissed but under the circumstances such dismissal should be without prejudice if petitioner amends his petition or files an amended petition within a reasonable time. This is not a case which should be decided on technicalities and if petitioner can properly aver matters which, if proved, entitle him to the grant of the prayer of the petition he should be given an opportunity to do so.

Now, August 6, 1953, the petition is dismissed and the citation is discharged but petitioner is allowed 15 days from this date to file an amended petition, if he so desires.