**Bechtel Estate**

*J. Brooke Aker* and *Smith, Aker, Grossman & Hollinger,* for executor.

*C. Edmund Wells, Lawrence Sager* and *Sager & Sager,* for contestants.

*Clarke F. Hess* and *Alvin L. Weiss,* for legatees.

TAXIS, P. J., March 11, 1970.—This matter is before the court upon certification by the register of wills under the provisions of section 207 of the Register of Wills Act of June 28, 1951, P. L. 638, sec. 207, 20 PS §1840.207. The certification sets forth, in summary, that a document dated April 10, 1969 (hereinafter called "the 1969 will") was presented for probate on July 15, 1969, by Matthew S. Santangelo, Esq., the executor named therein. This was done by submitting an unsigned copy of the document, affidavits of the subscribing witnesses and additional affidavits of these witnesses that they had witnessed execution of the original will which thereafter had been inadvertently destroyed. It is further set forth that a will dated March 22, 1956 (hereinafter referred to as "the 1956 will") was later offered for probate, thus creating "controversial, disputable and difficult questions of law in fact" which required determination by a hearing.

The unfortunate circumstances of this case are as follows. Mr. Santangelo prepared the 1969 will and decedent executed it in Mr. Santangelo's office before two secretaries, Linda U. Barton and Dorothy Miller,

who then signed as witnesses. At testator's request, Mr. Santangelo retained the original of the document and an additional copy thereof. Subsequently, in June, Mr. Santangelo was called to visit Mr. Bechtel, who was then in the hospital. Among the matters which were discussed, testator indicated that he desired some changes to his will, whereupon Mr. Santangelo dictated the draft of a new will. When Linda U. Barton undertook to type the same, she referred to the original for guidance. Perceiving that no changes were required in the second of the three pages, she removed the second page of the 1969 will and added it to the newly typed pages 1 and 3 of the revised draft. Without any instruction, she then destroyed pages 1 and 3, including testator's and the witnesses' signatures on the third page. This present controversy is now before us because the revised draft was never executed. Testator died July 5, 1969.

The document offered for probate consists of conformed copies of pages 1 and 3 of the original will, taken from the copy which had been retained in Mr. Santangelo's office, together with the original page 2. As previously noted, affidavits of explanation were submitted when probate was attempted, and both secretaries later testified to these events at the hearing. The 1969 document may be probated if: (1) it was not in fact revoked, (2) its loss resulted from a cause other than revocation, and (3) proof of its contents is satisfactorily established.

Section 5 of the Wills Act of April 24, 1947, P. L. 89, sec. 5, 20 PS § 180.5, provides for revocation of a will by physical destruction only by testator himself or by one acting for him in his presence. Obviously, neither of these circumstances is present here. Contestant argues, however, that by directing the preparation of a new will testator clearly demonstrated an

intent to revoke the prior one, but the answer to this is that under the statute an intention to revoke is not revocation. No case is cited in support of this argument, and it is doubtful that there are any standing for such a proposition. While it may be assumed that Mr. Bechtel intended to revoke his prior will if the revision was executed, this is far from holding that the giving of instructions for the preparation of a new will, without more, revokes an existing one.

What of the doctrine of "presumed revocation"? The rule is still strongly established that when a testator has possession of his will but it cannot be found at his death, there is a presumption that testator intentionally destroyed it: Bates' Estate, 286 Pa. 583. Generally, this presumption is rebuttable; but there are cases which hold, in effect, that it becomes conclusive where a prior will is in existence, so that no lost will may be probated where an earlier and otherwise unrevoked will can be produced: Harrison's Estate, 316 Pa. 15; Koehler's Estate, 316 Pa. 321. The reason for this apparently arbitrary rule is said to be that otherwise oral revocation would be sanctioned contrary to the provisions of the Wills Act: Shetter's Estate, 303 Pa. 193, 197. However, we doubt that the rule in these cases would be applicable where no presumption of revocation arises, since in all of them testator had possession of the lost document. We are aware of Leonard Estate, 427 Pa. 363, which forbade oral proof of the revocation of an earlier will which was necessary to save certain charitable bequests made within 30 days of testator's death; but the revoking will was not available, and the issue was substantially different than that before us now, since, in any event, testator's last will had been probated and the question before the court was the validity of the bequests made by it. See also McCaffrey Will, 16

Fiduc. Rep. 604, where probate of a lost will was allowed in spite of the existence of an earlier "otherwise unrevoked" will.

Fortunately, for present purposes it will be unnecessary to analyze the preceding authority further, because in the present case testator never had possession of the 1969 will and thus could not have revoked it. We agree with proponent that this is the critical factor here. No presumption of revocation can arise in the first place when the will was not in testator's possession at any time: O'Neill's Estate, 58 D. & C. 351. This proposition is more a logical observation than a rule of law. We conclude, therefore, that the 1969 will was not revoked and may be probated as a lost will.

Contestant then argues that at least two witnesses must prove every detail of the contents of the lost will (Harrison's Estate, supra), and that this has not been done. We agree that a lost will must be as completely and thoroughly proven as an existing one, which is what this argument comes to, but we think that the testimony of Mr. Santangelo and the secretaries meets this standard. While there is a certain amount of conflict as to details between the testimony of the witnesses, it does not relate to any significant aspect of the contents of the will. Mr. Santangelo read the will to testator and both secretaries heard portions of this and his conference with testator. Mr. Santangelo and Linda U. Barton authenticated the copies as genuine. All heard Mr. Santangelo ask testator whether he declared the will to be his own, and saw him sign it. Both secretaries have personal knowledge as to how the original will was destroyed. We are satisfied that the document offered for probate is a true copy of testator's last will dated April 10, 1969.

Accordingly, it is ordered and decreed that the

Register of Wills of Montgomery County may probate a certain unsigned writing, being a conformed copy of a will dated April 10, 1969, as the last will and testament of Charles Bechtel.