George Sunday's Estate.   Christiana Koller's Appeal.

*Will—Paper not testamentary—Judgment note—Evidence.*

Testator thirteen years after he made his will executed seven judgment notes payable to his children and grandchildren. The notes were drawn and witnessed by a justice of the peace. Decedent requested the justice to keep the notes until he called for them, and if he did not call for them, that then the justice "should deliver them to the parties to whom they were given after his, decedent's, death." Decedent never called for the notes, and after his death the justice delivered them to the parties to whom they were made payable. One of defendant's daughters testified that the testator had said to her that "he had made out papers so that it would cover all his personal property after his death to go to his children." He did not say, however, what kind of papers he had made. The only witness of the facts relating to the execution of the notes was the justice of the peace. *Held,* that the evidence was insufficient to establish the testamentary character of the notes, and that their probate as codicils to testator's will was properly refused.

Argued March 7, 1895.   Appeal, No. 286, Jan. T., 1895, by Christiana Koller, from decree of O. C. Berks Co., on appeal from decision of register of wills, refusing probate.   Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Appeal from decision of register of wills, refusing probate of certain papers alleged to be codicils of the will of George Sunday, deceased.

The court dismissed the appeal, filing the following opinion :

"On the 20th day of August, 1894, the appellants propounded to the register of wills, for probate, as a codicil or as codicils to the will of George Sunday, seven paper writings, signed and sealed by the said George Sunday, of which the following are copies :

A.

"$2,000.                    HAMBURG, PA., July 22, 1891.

"One day after date I promise to pay Christiana Koller (wife of Jas. A. Koller), or order, two thousand dollars, without defalcation, for value received. And further I do hereby authorize any attorney of any court of record in Pennsylvania or elsewhere, to confess judgment therefor and release errors;

and I hereby also waive all stay of execution from and after maturity of the above note.

" Witness my hand and seal the day and year above written.

"             " (Signed)       GEORG SUNDAY. [L. S.]

" Witness present:

" Sol. K. Hoffman.

## B.

" $2,000.                    HAMBURG, PA., July 22, 1891.

" One day after date I promise to pay to John S. Sunday or order, two thousand dollars, without defalcation, for value received. And further I do hereby authorize any attorney of any court of record in Pennsylvania, or elsewhere, to confess judgment therefor and release errors; and I hereby also waive all stay of execution from and after maturity of the above note.

" Witness my hand and seal the day and year above written.

"                    " (Signed)       GEORG SUNDAY. [L. S.]

" Witness present:

" Sol. K. Hoffman.

## C.

" $2,000.                    HAMBURG, PA., July 22, 1891.

" One day after date I promise to pay to Louisa Merkel (wife of Thomas D. Merkel) or order, two thousand dollars, without defalcation, for value received. And further I do hereby authorize any attorney of any court of record in Pennsylvania, or elsewhere, to confess judgment therefor and release errors; and I hereby also waive all stay of execution from and after maturity of above note.

" Witness my hand and seal the day and year above written.

"                    " (Signed)       GEORG SUNDAY. [L. S.]

" Witness present:

" Sol. K. Hoffman.

## D.

" $500.                    HAMBURG, PA., July 22, 1891.

" One day after date I promise to pay to Annie Jacoby (wife of Frank G. Jacoby) or order five hundred dollars, without defalcation for value received. And further I do hereby authorize any attorney of any court of record in Pennsylvania, or elsewhere, to confess judgment therefor and release errors; and I

hereby also waive all stay of execution from and after maturity of the above note.

"Witness my hand and seal the day and year above written.

"(Signed)      GEORG SUNDAY. [L. S.]

"Witness present:

"Sol. K. Hoffman.

### E.

"500.                          HAMBURG, PA., July 22, 1891.

"One day after date I promise to pay to Charles L. Hoffman or order five hundred dollars, without defalcation for value received. And further I do hereby authorize any attorney of any court of record in Pennsylvania, or elswhere, to confess judgment therefor and release errors; and I hereby also waive all stay of execution from and after maturity of the above note.

"Witness my hand and seal the day and year above written.

"(Signed)      GEORG SUNDAY. [L. S.]

"Witness present:

"Sol. K. Hoffman.

### F.

"$500.                         HAMBURG, PA., July 22, 1891.

"One day after date I promise to pay to Catharine Hoffman or order five hundred dollars, without defalcation, for value received. And further I do hereby authorize any attorney of any court of record in Pennsylvania, or elsewhere, to confess judgment therefor and release errors; and I hereby also waive all stay of execution from and after maturity of the above note.

"Witness my hand and seal the day and year above written.

"(Signed)      GEORG SUNDAY. [L. S.]

"Witness present:

"Sol. K. Hoffman.

### G.

"$500.                         HAMBURG, PA., July 22, 1891.

"One day after date I promise to pay to George R. Hoffman or order, five hundred dollars, without defalcation, for value received. And further I do hereby authorize any attorney of any court of record in Pennsylvania, or elsewhere, to confess judgment therefor and release errors; and I hereby also waive all stay of execution from and after maturity of the above note.

"Witness my hand and seal the day and year above written.

"(Signed)      GEORG SUNDAY. [L. S.]

" The register of wills having declined to admit the said writings to probate, as a codicil or as codicils to the will of George Sunday, on the ground that they were not of testamentary character, the proponents of the writings, the payees therein named, took this appeal.

" George Sunday, the decedent, died on the 27th day of March, 1893, leaving to survive him a widow, Catharine Sunday, and the following issue, viz : 1. John S. Sunday, a son ; 2. Christiana Koller, a daughter ; 3. Louisa Merkel, a daughter ; 4. The children of Mary Hoffman, a deceased daughter, viz : Charles L. Hoffman, George R. Hoffman, Annie Jacoby, and Catharine Burkhart ; and 5. the child of George Sunday, a deceased son, viz : Minnie Christiana Sunday.

" He had been twice married, and all of the above-named issue are descendants by his first wife, who died in the year 1866. About 1868 he married his second wife, Catharine, who survived as his widow, and who died on the 3d day of June, 1893, and whose personal representative is Joel M. Hoch, the appellee. George Sunday had no issue by Catharine, his second wife. He was seized and possessed of real and personal property. On the 20th day of September, 1878, he executed a will, to which appellants allege said writings are codicils, which was admitted to probate on the 7th day of April, 1893, by which he disposed of his estate as follows : ' *Item.* I give and bequeath to Minnie Christiana Sunday, a minor child of my son, George W. Sunday, deceased, the sum of one dollar. *Item.* I give and bequeath to my wife Catharine the one third of my personal estate absolutely, and the interest of the one third of the real estate during her natural life. *Item.* All the rest, residue, and remainder of my estate, real and personal, of whatsoever kind or nature the same may be (and the one third of my real estate after the decease of my wife), I give and devise the same unto my four children, to wit : John Sunday, Christiana, the wife of James A. Koller, Mary the wife of Jacob A. Hoffman, and Annie Louisa the wife of Thomas D. Merkel, share and share alike, and to their heirs and assigns forever.'

" The said will having named no executor, administration c. t. a. was granted to John S. Sunday, one of the above-named children, who, on the 18th day of April, 1894, filed his account upon the personal estate of the decedent showing a personal

estate for distribution of $4,814.91.  The account was called for audit June 4, 1894, and an adjudication thereof filed August 8, 1894.

"The writings now propounded as codicils to the said will of the decedent were presented at the said audit of the account of the administrator c. t. a. as obligations of the decedent, and payment thereof demanded, but it appearing that the notes were without consideration, and that they had not been delivered by the decedent, the claims made upon them were disallowed. They were then presented to the register of wills for probate as codicils to the said will of the decedent, and were refused probate by him, as stated above, on the ground that they were not shown to be of testamentary character.

"Have they been proven to be testamentary?  The writings themselves containing none of the features of a testamentary act, extrinsic evidence has been resorted to by the proponents to show that, while not in form testamentary, they were executed by the decedent with the intention that they shall operate only after his decease, and as codicils to his will.  The evidence adduced to prove them testamentary is as follows:

"Solomon K. Hoffman testified that he is a justice of the peace at Hamburg, this county, and that he wrote and witnessed the said writings for the decedent, and that they were written by him and executed by the decedent on the day they bear date, i. e. July 22, 1891; that the payees named in the notes are children and grandchildren of the decedent; that on the date of the notes the decedent came to his office and asked him to write such notes, and that when he had written them, decedent signed them, and that he, the witness, signed as witness to their execution; that after they had been signed by the decedent and witnessed by the witness, the decedent requested him to 'keep the notes until he (the decedent) called for them, and if he (the decedent) did not call for them' that then he, the witness, 'should deliver them to the parties to whom they were given, after his (decedent's) death;' that that was all that was said, and that decedent never called for the notes, and never gave him, the witness, any other instructions in regard to them; that about one month after decedent's death he (the witness) delivered the notes 'to the parties to whom they were made,' as decedent had instructed him; that the decedent told

him ' to draw judgment notes ; ' that decedent fixed the amount and ' time of payment,' as they appear in the notes ; that the decedent did not tell the witness why he gave the notes ; that he could not say that Catharine Sunday, widow of the decedent, knew of the notes, and that she did not elect to take under the intestate laws; that he never wrote any other papers for the decedent in which the children were interested.

" Christiana Koller testified, that she was the daughter of the decedent, and lives in Chester county; that she knows her father's handwriting, and that the notes are signed by him; that in the month of June, 1892, she visited her father at his home in Windsor township, and that on the 17th or 18th of that month, she returned to her home in Chester county; that her father drove her from his home to the railroad station at Hamburg, and that on the way to the station, he, in the course of conversation, told her that ' he had made out papers so that it would cover all his personal property after his death to go to his children ; ' that he said ' he thought that the widow had plenty to live on from the income of the farm, the real estate, and if she did not, we should see that she would have plenty to live on ; ' that ' he said we should divide the money equally among the children, whatever the amount would come to if it did not reach the personal property ; we should divide the money equally among us ; he said he did not mean to take any money of the real estate ; he said he wanted the real estate for her to live on, she could comfortably live on that ; ' that he said Squire Hoffman had done all his writing for several years— that he wrote all his papers, but did not say that he had written these papers, and did not say who kept them ; that he said they would get the papers ' after his death ; ' that he did not say what kind of papers he had made, but said, ' I have made papers ; ' that he did not say that the widow was not to have any of the personal property, but did say that the papers ' would cover the personal property,' and that she had plenty of income off the rest; that he said ' what was left of the personal property we were to divide among ourselves, and see that the widow had plenty to live on ; ' and that he did not say that the widow was not to have any of the personal property.

" The foregoing is all the testimony submitted upon the question of testamentary intent.  A number of witnesses testi-

fied that the signatures to the notes were in the handwriting of George Sunday, the decedent; and the payees named in the notes testified that their respective notes were delivered to them after the decedent's death.

" In 1878, thirteen years before the seven notes were executed by the decedent, he made and duly executed a will in the usual form.   By it he gave his wife Catharine precisely what she would have received under the intestate law.   When he went to Solomon K. Hoffman on July 22, 1891, to have the papers written, he told him ' to draw judgment notes' payable one day after date, and to ' keep the notes until he called for them, and if he did not call for them,' he ' should deliver them to the parties to whom they were given, after his death.'   It is manifest from his conduct that the decedent knew what he was doing on the 20th of September, 1878, when he made his formally executed will, and on the 22d of July, 1891, when he directed the drawing of, and duly executed, the seven judgment notes.   There is no ambiguity or uncertainty in either act, but on the contrary each is intelligently done with its appropriate legal formality.   There is not a particle of evidence in the case to show that the decedent intended the notes to be other than what they purport to be, obligations or evidences of indebtedness ; and that they were accepted by the payees from Mr. Hoffman, as of that character, is shown by the fact that they presented them for payment at the distribution of the personal estate of the decedent.   It is quite probable that the decedent thought it was immaterial to the validity of the notes as obligations, whether they were delivered in his lifetime or after his decease ; and there is nothing in his conduct which shows that he intended them to operate in any other way than as judgment notes.   While it is undoubtedly true that no particular form is necessary to a testamentary act, yet it is also true that all acts are not testamentary, and that where a decedent has done two acts, one of which is distinctively testamentary in form, and the other and later act is as distinctively non-testamentary in form, and is couched, with strict technical propriety, in the apt language of contract, there is no reason for holding the latter testamentary, without clear proof of fraud, accident, or mistake.   In speaking of the cases where writings not in form testamentary have been allowed to have that effect,

it is said in 1 Williams on Executors, 141 (ed. 1877), that 'No case has gone the length of deciding that because an instrument cannot operate in the form given it, it must operate as a will. The true principle to be deduced from the authorities appears to be, that if there is proof, either in the paper itself or from clear evidence dehors, first, that it was the intention of the writer of the paper to convey the benefits by the instrument which would be conveyed by it, if considered as a will; secondly, that death was the event that was to give effect to it; then, whatever may be the form, it may be admitted to probate as testamentary. And there seems to be this distinction in the consideration of papers which are in their terms dispositive, and those which are of an equivocal character; that the first will be entitled to probate, unless they are proved not to have been written animo testanti; whilst, in the latter' (where the writing is equivocal) 'the animus must be proved by the party claiming under them.' And at p. 142, the author says: 'But it is essentially requisite, that the instrument should be made to depend upon the event of death, as necessary to consummate it; for where the paper directs a benefit to be conferred inter vivos, without reference, expressly or impliedly, to the death of the party conferring it, it cannot be established as testamentary.'

" The papers in question here are perfectly clear, intelligible and unambiguous in their meaning, and the conduct and declarations of the decedent are not inconsistent with them. They are judgment notes which would have become effectual if delivered in his lifetime, and nothing which he said or did at their execution, denoted or implied that he did not intend to deliver them in his lifetime, or that their operation was to depend upon, and be postponed to, the event of his death.

" The cases which have been chiefly relied upon by the appellants, as illustrating the supposed testamentary character of the notes, are: Wareham v. Sellers, 9 Gill & Johns. 98, and Cary et al. v. Dennis & Wife et al., 13 Maryland, 1. In Wareham & Sellers the writing offered for probate was as follows:

" ' August the 12th, 1836.

" ' This will sertify that I do assighn, and gave all my personal property unto George Wareham—that is to say, one silver wach, one chest, one beaurough, and sum carpenters' tools,

besids two notes of hand, one two hundred dollars, and one of eighty-nine dollars, and eighteen dollars book account.

" ' Signed by me in the presence of           his

          " ' THOMAS SATER.            PHILIP X SELLERS.'
                                            mark

" The proponent was there allowed to prove declarations of the decedent, made at the time of executing the paper, and also the circumstances under which it was executed, in order to show its testamentary character.   The court gave no reason for the ruling, but the reason probably was the rather equivocal character of the writing.   The case does not show that the paper was ever established as a will.   In Carey v. Dennis, a father executed two bonds in favor of his sons, and delivered them to a third party with directions ' to take care of them, and deliver them to the sons, *in case he died without a will.'* Suit having been brought upon the bonds against the administrator, to enforce payment of them as obligations of the decedent, it was held that, not having been delivered to the sons by the decedent in his lifetime, they were not valid obligations. The court expressed the dictum that they were testamentary, because they were to operate only in case the father ' died without a will.'   Admitting for the purpose of this case, that the bonds in Carey v. Dennis would, if the question had been before the court, have been held to be testamentary, the difference between the fact there and here is palpable.   In that case the proof was ' clear ' that the bonds were to operate only in case of the father's death without a will ; in other words, as, and in lieu of, a will ; whereas here there is no proof that the notes were to be in any way dependent for their efficacy upon the death of the maker, either with or without a will.

" I do not think that the decedent intended the notes here to be a part of his will, but if he did have any such intent, it has not been proved, as the statute requires, by two witnesses. Testamentary intent is the very breath of life of a will, and, of course, must be established by two witnesses.   In Hock v. Hock, 6 S. & R. 47, GIBSON, J., said : ' Proof of execution must be made by two witnesses, each of whom must separately depose to all facts necessary to complete the chain of evidence, so that no link in it may depend on the credibility of but one.   Where the evidence is positive, there can be no

difficulty, for the witnesses then attest the simple fact of execution itself; but where the evidence of one, or both, is circumstantial, each must make proof complete in itself; so. that, if the act of assembly were out of the question, the case would be well made out by the evidence of either. Circumstantial proof cannot, therefore, be made by two or more witnesses alternating with each other, as to the different parts of the aggregate of circumstances which are to make up the necessary sum of proof; the evidence of each not going to the whole.'

"In Comb's Appeal, 105 Pa. 155, Mr. Justice TRUNKEY said: 'Wills differ from other instruments in that two witnesses are required to authenticate them.'

"As the notes contain no evidence of an intention of the decedent that their operation should be dependent upon the event of his death, such testamentary intention must be proved aliunde, by the testimony of two witnesses. There is but one witness, Solomon K. Hoffman, who testifies to any declarations of the decedent which certainly relate to the notes; the testimony of Mrs. Koller being so general as not necessarily to apply to them. She testifies that her father did not say that Hoffman had written the papers of which he spoke to her, and. did not say Hoffman had them; that her father did not say what kind of papers Hoffman had made, but said 'I have made papers;' that he did not say that the widow was not to have any of the personal property, but did say that the papers 'would cover the personal property,' and that the widow had plenty of income off the rest; and that he said that what was left of the personal property the children were to divide among themselves, and to see that the widow had plenty to live on. I do not see in the testimony of Solomon K. Hoffman any satisfactory evidence that the decedent intended that the operation of the notes should depend upon the fact of his death; and in this respect Mrs. Koller's testimony is equally deficient. Besides, the declarations of the decedent to Mrs. Koller were so general that they neither identified nor sufficiently described the papers, to which he referred; and there is nothing in his declarations to her, not consistent with the writings themselves, regarded merely as judgment notes. Catharine Sunday, the widow, had lived with her husband, the decedent, for 25 years.

His will, which was proved before her death, gave her precisely what she would have received if he had died intestate. She seems to have known nothing of these notes when she died, and appears to have had no motive to refuse to take under the will, and to elect to take under the intestate law.   If these notes are established as codicils to the will of the decedent, her interest in the personal estate will be most materially affected.   With such a result flowing from a decision admitting the notes to probate as testamentary, the evidence of their testamentary character should be clear.

" I do not think that the evidence submitted to prove the notes testamentary is sufficient for the purpose, and the decision of the register of wills refusing to admit them to probate as codicils to the will of George Sunday is therefore affirmed ; and the appeal of the proponents is dismissed ; the appellants to pay the costs."

*Error assigned* was decree dismissing appeal.

*Cyrus G. Derr, D. Nicholas Schaeffer* with him, for appellant.—A paper, though upon its face neither in form nor substance testamentary, may be established as a will by a proper measure of extrinsic evidence : Jarman on Wills, vol. 1, p. 43 ; Frew v. Clark, 80 Pa. 178 ; Habergham v. Vincent, 2 Vesey, Jr. 231 ;  Carey v. Dennis, 13 Md. 1 ; 1 Williams on Executors, 141 ; Robertson v. Smith, L. R. 2 Probate and Divorce, 43 ; Wareham v. Sellers, 9 Gill & Johnson (Md.) 98 ;  Witherspoon, v. Executors of Witherspoon, 2 McCord (S. C.) 520 ; 1 Jarman on Wills, 45 ;  Patterson v. English, 71 Pa. 454; Scott's Est., 147 Pa. 100.

The extrinsic evidence submitted in this case is sufficient to evince a testamentary intent on the part of George Sunday and to establish the papers as a codicil or codicils to his will.   Hock v. Hock, 6 S. & R. 47 ;  Tozer v. Jackson, 164 Pa. 380.

*James H. Marx*, for appellee, cited : 1 Williams on Executors, 142; Patterson v. English, 71 Pa. 454; Shields v. Irwin, 3 Yeates, 389 ; Person's App., 68 Pa. 231 ;  Hock v. Hock, 6 S. & R. 47 ; Derr v. Greenawalt, 76 Pa. 239 ;  Comb's App., 105 Pa. 155 ; Scott's Est., 147 Pa. 100.

PER CURIAM, March 18, 1895:

The questions on which this case depends have been treated by the learned judge of the court below with so much thoroughness and clearness that we affirm the judgment on his opinion. We concur fully in his conclusions and in the process of reasoning by which he has reached them.