# Hodgson's Estate.

*Wills—Probate — Lost will — Two subscribing witnesses — Contents of will—Evidence—Burden of proof—Act of June 7, 1917, P. L. 403.*

1. Proof of a lost will is made out only by proof, by two witnesses, of execution and of contents, each of which must separately depose to all the facts necessary to complete the chain of evidence, so that no link in it may depend on the credibility of one.

2. Under the Act of June 7, 1917, P. L. 403, two witnesses must prove the contents of the lost will, substantially as set forth in the copy offered for probate.

3. In proving a lost will, the burden rests on the proponents.

4. Evidence that the will was designated by the decedent to the subscribing witnesses, by a particular name, is not such a declaration of identification as would supply the proof of contents necessary by two witnesses.

5. Nor can such declaration be used in support of the scrivener's testimony as to contents, inasmuch as each witness must be competent without aid borrowed from the other.

6. Declarations can be availing only when they go to the immediate act of disposition.

7. That the reproduction of the lost will may correspond in disposition with what those who knew the testator, described as the most probable objects of his bounty, and that such evidence was confirmatory of the disputed will, does not bridge the gap made by the absence of two witnesses as to the contents.

Argued February 14, 1921. Appeal, No. 25, Oct. T., 1920, by Henry H. Hodgson and Martha L. Hodgson, from decree of O. C. Allegheny Co., March T., 1919, No. 452, dismissing petition for probate of lost will, in estate of Henry Hodgson, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Petition for probate of lost will. Before MILLER, P. J. The opinion of the Supreme Court states the facts.

The court dismissed the petition. Henry H. Hodgson and Martha L. Hodgson, petitioners, appealed.

*Error assigned,* inter alia, was above decree, quoting it.

*Emerson G. Hess,* with him *Leighton H. Campbell,* for appellant.—The will was not revoked by testator: Glockner v. Glockner, 263 Pa. 393.

The contents of the will were correctly proven: Mitchell v. Low, 213 Pa. 526; Deaves's Est., 140 Pa. 242; Ginder v. Farnum, 10 Pa. 98; Taylor v. Meekly, 4 Yeates 79; Rohrer v. Stehman, 1 Watts 442.

Circumstances may supply the want of one witness, where they directly go to the immediate act of disposition: Eyster v. Young, 3 Yeates 511; Mullen v. McKelvey, 5 Watts 399; Lewis v. Lewis, 6 S. & R. 489; Comb's App., 105 Pa. 155.

*James L. Weldon,* with him *Chauncey Lobingier,* for appellee.—That both the execution and contents of a

lost will must be proven by two competent witnesses, has been and is still being held by our courts: Foster's App., 87 Pa. 67; Glockner v. Glockner, 263 Pa. 393; Rhoads's Est., 241 Pa. 38; Michell v. Low, 213 Pa. 526; Hock v. Hock, 6 S. & R. 46.

OPINION BY MR. JUSTICE KEPHART, March 14, 1921:

A reputable scrivener handed to decedent a paper prepared at the latter's direction to be executed as his will. For present purposes we may assume this paper, unchanged, was duly executed by decedent, attested by two subscribing witnesses a few days before his death, placed in a bureau drawer some feet from his bed, and decedent was thereafter in such physical condition as to be unable to reach the place where the will was located. After his death, this paper could not be found. No information relative to its existence has been brought to light, though testator repeatedly spoke of it just before his death; but for his enfeebled condition and these references to the will, the usual presumption that decedent destroyed it would prevail; then we have statements in the record concerning the very suspicious conduct of a brother, in decedent's room after death, who was not to be benefited under the terms of the will. A substantial reproduction as testified to by the same scrivener, with the names of two subscribing witnesses attached, was offered for probate and the question raised in the petition was certified to the court below for determination, and, upon final hearing, probate was refused.

Was there sufficient proof of the contents of the will, as executed before the two subscribing witnesses, to admit the copy thus identified to probate? The statement of facts, so narrated, are viewed in the light most favorable to proponents. The attesting witnesses knew nothing of the contents of the will, nor did they know (nor could they know, without knowledge of the original), that the supposed reproduction, as offered for probate, was in substance a copy of the instrument they had

witnessed. Their testimony was effective for but one purpose, and a very important purpose. It proved a will had been duly executed. There was no other evidence offered tending to establish the contents, nor was any memorandum produced for this purpose from any other person than the scrivener, and, assuming decedent identified the will by calling it the Riddle will (that being the scrivener's name), still there is a fatal hiatus in the evidence which avoids bringing it within the Wills Act of 1833, section 6, reënacted in section 2 of the Wills Act of 1917, requiring the contents of a lost will to be proved by the oath or affirmation of two or more competent witnesses—otherwise the will shall have no effect. Under the act, to establish a lost will there must be proof by two witnesses, not only of due execution, but of the contents, substantially as set forth in the copy offered for probate. Proof of a lost will is made out only by proof, of execution *and of contents,* by two witnesses, "each of whom must separately depose to all the facts necessary to complete the chain of evidence, so that no link in it may depend on the credibility of but one": Hock v. Hock, 6 S. & R. 47. In the more recent case of Rhoads's Est., 241 Pa. 38, a subscribing witness saw the scrivener write something special, fold it up, place it in an envelope, when the latter requested this witness to accompany him to decedent's house to witness a will. The scrivener produced the will, enclosed in the envelope, from his pocket; decedent looked it over and executed it; the witness and scrivener attested it in her presence. It could not be found after decedent's death. The court, commenting on this, said: "To establish this disputed will, at least two witnesses must testify to such a knowledge of its contents as to enable each of them to identify the contents of Exhibit A [the copy] as a substantial reproduction of like provisions contained in the disputed will; and in the absence of proof by two witnesses, each possessing such knowledge of the contents,......it must, in the language of the statute, be held to 'be of no ef-

fect.'" Analyzing the language in that case, there is nothing to show the attesting witness knew anything of the contents of the will, and, if the evidence of the scrivener is stricken from it, all the witness could testify to was that he had signed a will to which decedent had affixed her signature: see Foster's App., 87 Pa. 67; Michell v. Low, 213 Pa. 526; Rhoads's Est., 241 Pa. 38; Glockner v. Glockner, 263 Pa. 393. The cases cited by appellant do not reach the point here involved. Most of them are cases which do not concern a lost will, and those that do are not in conflict with the principles we have stated.

The burden rested on the proponents, and, if we eliminate the scrivener's testimony, we have absolutely no evidence of the contents of the disputed will, or that the original of what is represented by the "substantial reproduction" ever existed. The evidence that the will was called the Riddle will by decedent is not such a declaration of identification as would supply the proof of contents necessary by two witnesses; this will be more manifest later on; nor can it be used in support of the scrivener's testimony as to contents, inasmuch as each witness "must be competent, without aid borrowed from the other": Hock v. Hock, supra. Of course decedent should know the contents of the instrument he has executed, and, when he speaks of its terms, he should be taken as having no motive for misrepresenting them. But declarations can be availing only when they go to the immediate act of disposition. That the reproduction may correspond in disposition with what those who knew the testator described as the most probable objects of his bounty, and that such evidence was confirmatory of the disputed will, does not bridge the gap. Even though the scrivener had witnessed the will and then made the copy, as he did in Rhoads's Estate, there would be but one witness to the contents.

The court is not assiduous to restrict the rules of evidence relating to proof of a lost will, as distinguished

from other lost instruments, nor to refuse to give due weight in such proceedings to inferences naturally deducible from circumstances in connection with testator's life as it relates to others, and we are far from desiring to encourage dishonesty and fraud in disappointed heirs who may seek to frustrate a testamentary disposition by destroying a will. When made according to the requirements of the statute, it ought, after testator's death, to be carried into effect; still, when offered for probate, the will, or its substance, must measure up to the requirements fixed by laws; and here the legislature has laid its hand on the subject and directed the judicial course. It has been wisely done. The two-witness rule is sound; by permitting one witness to establish the contents of a lost will, the door would be opened to intriguing and designing persons, after which misfortune must necessarily follow; and, while, by such latter rule, a disappointed heir may be discouraged from destroying a will, dishonesty, fraud and criminal wrong would be greatly encouraged. If a will, properly executed, is lost, and the one-witness rule should prevail, it would permit a scrivener to write the will after his own fashion, diverting the estate into channels never dreamed of by the testator, disinheriting heirs, and denying, to those close to him throughout life, the benefits of his bounty. Where two witnesses to the contents are required, the opportunity for engrafting bogus wills on estates, or for dishonesty in scriveners who write wills, or other fraud in connection therewith, if not made impossible, is greatly lessened. Under this rule, when the disappointed heir destroys a will and two witnesses to prove contents are not available, the law, in such cases, writes an excellent will for the decedent, giving the estate to those, by nature and by presumption, nearest and dearest to the decedent. No instrument coming before the court for determination is guarded more jealously than the will of one who is no longer able to voice his wishes.

The decree of the court is affirmed, costs to be paid by appellants.