## Tribit Estate

*Albert E. Holl, Jr.*, and *Joseph S. Lord, 3rd*, for proponent.

*Ralph L. Lindenmuth* and *Philip B. Driver, Jr.*, for contestants.

VAN RODEN, P. J., March 17, 1952.—William C. Tribit died February 3, 1949, and one Lulu Bogle (Tribit), proponent, claims to be entitled to receive his entire estate; first, by virtue of a will made by decedent, dated January 9, 1929, wherein he named her as sole beneficiary and appointed her executrix, which will has, however, been lost, and secondly, if the contents of the lost will cannot be proven, she is entitled to inherit as the surviving spouse of decedent, by virtue of a common-law marriage existing at the time of his death.

The heirs-at-law of William C. Tribit, in the event of intestacy and leaving no spouse surviving, have filed their appeal to this court from the decree of the register of wills directing that the copy of the alleged lost will be admitted to probate as the last will and testament of decedent.

The first problem to be determined is whether the paper dated January 9, 1929, as a copy of the purported lost will should be admitted to probate.

In support of the contention of proponent, Mrs. Catherine R. Dougherty was called as a witness and testified that she was secretary to the late Harry J. Makiver, Esq., from 1920 until he died in 1942, that

on January 9, 1929, Mr. Makiver dictated to her, in the presence of decedent, a draft of a will, that she then typed the will as dictated, making the original and one carbon copy, and that the original was signed by Mr. Tribit in Mr. Makiver's office, in her presence and in the presence of G. Harmon Webb, Esq., and she and Mr. Webb then signed the document as witnesses. All of this took place in the presence of Mr. Makiver and Mrs. Bogle (Tribit) as well as decedent. She testified further that after the will was signed and witnessed she does not recall whether Mr. Tribit took it or whether Mr. Makiver placed it in his safe deposit box as was his habit.

Mrs. Dougherty definitely identified the carbon copy of this will which was admitted to probate by the register of wills and which is in evidence in this proceeding, and thereby verified the contents of the lost will.

Mr. Webb was not called as a witness for the reason given by counsel for proponent that he was not available and that it was learned from him that he had no recollection whether or not he had witnessed the will.

Lulu Bogle (Tribit) testified that she was present in Mr. Makiver's office with Mr. Tribit, that Mr. Makiver hand-wrote the draft and after Mr. Tribit signed this paper, Mrs. Dougherty copied it on the typewriter and then decedent signed the original typewritten copy in the presence of Mrs. Dougherty and a gentleman whose name she did not recall.

This witness also verified the contents of the lost will.

The widow of Mr. Makiver testified that she had the custody of her deceased husband's personal effects, including the contents of his office, since his death, that his files were alphabetically arranged and in an orderly condition and she had not had any difficulty locating any file which was desired. She testified further that all of the original wills of clients of her husband had been returned to them, that she did find the file of Mr.

Tribit, which was in good order, that no original will was there and that she did find a carbon copy of Mr. Tribit's will which she turned over to William Taylor, Jr., Esq., attorney for Mrs. Bogle (Tribit). This copy is the document admitted to probate by the register of wills.

The original will, signed by decedent, was never found, and the carbon copy thereof was offered for probate, and admitted by the register of wills. By the terms of this document the entire estate was given to proponent, therein named as Lulu Bogle, and she was designated as executrix.

The rule relating to proof of lost wills is set forth in Hodgson's Estate, 270 Pa. 210, 213 (1921), as follows:

"Proof of a lost will is made out only by proof, of execution *and of contents*, by two witnesses, 'each of whom must separately depose to all the facts necessary to complete the chain of evidence, so that no link in it may depend on the credibility of but one' ".

Probate in that case was denied because the attesting witnesses did not know the contents of the will.

In the case at bar, Mrs. Bogle (Tribit) was a competent witness under the Act of 1887, although counsel for appellants argues that her financial interest in the outcome of this litigation has a distinct bearing on her credibility. So, it would appear that proponent has complied with this requirement of the law by proving the contents, as well as the execution, of the will by two witnesses.

However, in addition it is also essential for the proponent to overcome the presumption that the will which cannot be found was revoked by decedent. In this connection, the rule is stated concisely and with clarity, in Bregy's Intestate, Wills and Estates Act of 1947, at page 2313, as follows:

"This presumption can be rebutted by showing that someone else destroyed it, that decedent did not have

access to it; or that decedent made statements up until the time of his death indicating that his will was still in existence. Such evidence, however, must be 'positive, clear and satisfactory.' See *Dalbey's Estate*, 326 Pa. 285 (1937), and *O'Neill's Estate*, 58 D & C 351 (O. C. Bucks 1946), for a complete discussion of the Pennsylvania authorities governing this presumption."

It is stated in Thompson on Wills, 3rd ed., §204, at page 312:

"The petition or complaint to establish a lost or destroyed will should show that the decedent executed a will, and that it was afterward destroyed without his consent in his lifetime, or otherwise fraudulently disposed of, or, if lost, that such will was in existence at the time of the death of the testator."

And in Thompson on Wills, §205, at pages 312, 313:

"It is incumbent on the party seeking to establish the will, not only to prove its due execution, but also to rebut the presumption that the testator destroyed it if it can not be found at his death. . . .

"In order to authorize the court to probate a copy of the lost or destroyed instrument, it is incumbent upon the proponent to show what became of the original will, in whose custody it was placed, account for its nonproduction, and produce some competent proof of its contents."

See also Hunter's Commonplace Book, at page 919.

In fact, this rule is so universally established that further emphasis thereon is unnecessary.

In the instant case, therefore, we have the following admitted facts:

(a) The will was prepared and signed in 1929, and thereafter the scrivener and attorney for testator, Mr. Makiver, lived and maintained his law offices in the same place for a period of 13 years, and was accessible to visits by testator.

(b) Testator survived Mr. Makiver, whose death occurred in 1942.

(c) Upon the death of testator in 1949 Mr. Makiver's widow produced the office file of her husband relating to decedent's will, which was in good order and did not contain the original will, but did contain a carbon copy thereof (unsigned).

(d) Mr. Tribit visited Media, where Mr. Makiver maintained his office and where his widow has continued to reside, as late as 1947.

(e) There is no evidence whatever as to whether Mr. Makiver ever had the signed will in his possession or whether decedent had the same.

In view of these facts, together with the testimony of several disinterested witnesses to the effect that decedent had made statements to them that he had no will, did not believe in wills, did not know to whom he would leave his money, etc., it is quite clear that decedent had many opportunities to revoke the will made in 1929. There is no affirmative evidence that the will was not revoked.

The court cannot draw the inference, as claimed by proponent, that the signed will was lost while lodged in Mr. Makiver's office, for the reason that there is *no* evidence that the will was ever left there after it was signed.

The court therefore holds that the presumption that the lost will has been revoked has not been rebutted and, therefore, the contents thereof may not be proven by the production of the unsigned carbon copy. The appeal from the probate by the register of wills must be sustained.

As a result of this conclusion by the court decedent will have died intestate. We now come to the second problem, to wit, is proponent, Lulu Bogle (Tribit), the lawful spouse of decedent, and as such entitled to share in the distribution of his estate. It is agreed that de-

cedent and Mrs. Bogle never entered into a ceremonial marriage, and never secured a license to marry.

Considerable testimony was presented in an effort to prove that certain words used by Mr. Tribit and Mrs. Bogle were sufficient to create the relationship of husband and wife. Evidence was also presented to show cohabitation for 35 years, the general reputation of the parties as husband and wife, and statements made by Mr. Tribit to seven or more persons that he was married to Mrs. Bogle.

However, even if we concede that all of the requirements to establish a common-law marriage have been met, an examination of the chronology of the facts furnishes the answer to the question.

In 1897 Lulu Reed was lawfully married to Ulysses G. Bogle, by whom she was deserted in 1909. There is no record of a dissolution of the marriage by divorce.

In 1914, Lulu Bogle commenced living with the deceased, William C. Tribit, which was a meretricious relationship.

On April 5, 1915, according to the testimony of Lulu Bogle, she and William C. Tribit attempted to enter into a common-law marriage by saying each to the other that they took each other for husband and wife.

In 1920 it appears by a certificate of the United States District Court for the District of Columbia that Ulysses G. Bogle was married to one Lillie Harrington.

From this chronology it is evident that at the time when Mrs. Bogle claims to have entered into a common-law relationship with decedent in 1915, she was already married to Ulysses G. Bogle, which marriage was still subsisting. Therefore, she was legally incapable of entering into another marriage, whether it be common law or ceremonial. There is no evidence of a divorce which could have terminated her marriage to Bogle,

and the fact that he was still alive is proven by the evidence of his action in 1920 in entering into another marriage.

In the present proceeding no presumption exists that the purported marriage of Bogle to Lillie Harrington was valid, as they are not parties of this proceeding.

There is a presumption in this case that the marriage of Lulu Bogle to Ulysses Bogle in 1897, being admittedly a valid marriage, continues to exist unless and until terminated by death or divorce.

It is self-evident that the court cannot presume from the evidence of the marriage of Ulysses Bogle to Lillie Harrington *in 1920*, that he secured a legal divorce from Lulu Bogle *before April 5, 1915*, and thereby made her common-law marriage to decedent legal.

The court holds, therefore, that Lulu Bogle has failed to prove a legal marriage subsisting between her and decedent at the time of his death.

Accordingly, the court enters the following

## *Decree*

And now, to wit, March 17, 1952, the above matter having come on to be heard on appeal from the action of the Register of Wills of Delaware County in entering a decree dismissing the caveat filed by Harriet M. Harding, Deborah Moore Ward, sisters of decedent, and Charles H. Ward, nephew of decedent, and directing that the copy of the document dated January 9, 1929, be regularly admitted to probate as the last will and testament of William G. Tribit, and after a hearing in open court, after careful consideration of the evidence adduced as well as oral argument and submission of briefs, it is ordered, adjudged and decreed as follows:

1. The appeal of Harriet M. Harding, Charles H. Ward, individually and as executor of the estate of Samuel C. Tribit, deceased, and Charles H. Ward and

Girard Trust Company, executors of the estate of Deborah M. Ward, deceased, from the action of the register of wills in entering a decree dismissing the caveat filed by appellants and directing that the copy of a document dated January 9, 1929, be regularly admitted to probate as the last will and testament of William C. Tribit, deceased, be and the same is hereby sustained.

2. The register of wills is directed to revoke the probate of the document dated January 9, 1929, as the last will and testament of William C. Tribit, deceased.

3. Lulu Bogle (Tribit) has failed to prove that she is the surviving spouse of decedent, William C. Tribit, and she has no interest in his estate, and is not entitled to the grant of letters of administration on said estate.

4. The costs of this proceeding shall be borne by the estate of William C. Tribit, deceased.