## Kehr Estate

Before Klein, P. J., Bolger, Hunter, Lefever and Saylor, JJ.

260

266

*J. Webster Jones,* for appellant.
*Austin Miller Lee,* for proponent.

BOLGER, J., June 13, 1952.—The learned hearing judge found that: (1) Testatrix's initials constituted a valid signature, but that (2) such writing did not constitute "other writing" within the act of assembly.

Appellant has excepted to the second of these findings, while the proponent of the will has excepted to the first finding and also to the action of the hearing judge in admitting the testimony of the scrivener of the will respecting correspondence and telephone conversations he had with testatrix prior to her death.

The undisputed facts are set forth in the opinion of the learned hearing judge. The Wills Act of April 24, 1947, P. L. 89, which governs this case is substantially a reënactment of the earlier Wills Act of April

8, 1833 P. L. 249 secs. 13 and 14, and of June 7, 1917, P. L. 429, secs. 20 (*a*) and (*b*). Therefore, the decisions cited herein construing these earlier acts have equal force and effect in interpreting the Act of April 24, 1947, P. L. 89. It should be added that the alleged revocation, if effective, would have revoked testatrix's will eo instante: Ford's Estate, 301 Pa. 183; Burtt Will, 353 Pa. 217. Since the writing in question is undated, it might have been written before or after the enactment of the Wills Act of April 24, 1947, P. L. 89. However, since the existing law was the same from 1942 to the date of testatrix's death, this point is unimportant.

The execution of wills and their revocation by writing are subject to identical requirements: Both must be in writing, evidence testamentary or revocatory intent, be signed at the end thereof and be proved by two witnesses. Therefore, the cases construing execution of wills have similar application in construing revocatory writings. These tests apply to both formal and informal instruments. The fact that the will sought to be revoked was formally executed, while the alleged revoking writing is informal, is immaterial so long as the intention to revoke is sufficiently disclosed: Bassett's Estate, 18 D. & C. 242. However, the question of revocation by writing involves a problem not present in the execution of a nonrevoking will —the impact or effect of the revoking writing upon another instrument, the will it purports to revoke.

Sometimes the "other writing" clearly fulfills both requirements of intent to revoke and the act of revocation. Others may lack one element. When that lacking element is the act of revocation—the act effectuating the intent—of an existing will, no amount of parol testimony will serve to establish it (Koehler's Estate, 316 Pa. 321); even though proof of a nonrevoking lost will may be so established: Hodgson's Estate, 270 Pa.

210. It is only when the writing is ambiguous or uncertain as to the presence or absence of revocatory intent that such lack may be supplied by extrinsic evidence: Wenz's Estate, 345 Pa. 393, and authorities cited therein.

While the hearing judge stated that the carbon copy of the will upon which the writing appears was "a dead thing", it was actually evidence of the contents of the original will: Bates' Estate, 286 Pa. 583. This becomes important in determining the question of animus revocandi, because it is admitted that testatrix did not have in her possession her original will and that the carbon copy upon which the writing appears was an exact copy of the original. She could, therefore, properly be held to have regarded, although mistakenly, the carbon copy as the original and thought she was incorporating it by reference when she wrote "null and void . . ." at the top of it. We conclude, therefore, that the writing in question expresses testatrix's intent to revoke her will.

But what did testatrix revoke? This question is complicated by the fact that the original will was not in her possession. However, that fact alone cannot determine the question. The answer is: Only the unexecuted carbon copy of her will, but not the will itself. She did not by that act transform the copy into the original will: Willing's Estate, 212 Pa. 136, 141. There is no certainty as to her completed purpose: Kimmel's Estate, 278 Pa. 435. A person might honestly think he is executing a will when he signs a writing, but he may be mistaken. Should the paper he signs be not "a declaration of a man's intention which he wills to be performed after his death", according to Blackstone, but something else, it will not be held to be a will: McCune's Estate, 265 Pa. 523; O'Connor's Estate, 273 Pa. 391; Hunter's Orphans' Court Commonplace Book, vol. II, "Wills", sec. 1(i). Similarly in

cases of revocation. In no sense can we regard this unexecuted copy as anything but evidence of the contents of the original: Bates' Estate, supra. One can reasonably paraphrase the writing to read, "The instrument upon which this is written is null and void," but it exceeds the bounds of the purposes of the Wills Act to supply in addition what would meet the requirements of the Wills Act: "My original will, of which the instrument upon which this is written is a carbon copy, is null and void." Therefore, the finding that the claimed act of revocation was not properly the "other writing" within the terms of the Wills Act is sustained.

The testimony of Mr. Evans, the scrivener of the original will, was admissible only for the purpose of proving that the original will was retained by him and a carbon copy thereof simultaneously delivered to testatrix. These acts, which are otherwise admitted, were part of the testamentary execution. However, the other phases of his testimony were inadmissible. He was incompetent to testify concerning the act of revocation (Koehler's Estate, supra) and also as to testatrix's intent to revoke, since the writing discloses on its face, as above stated, her animus revocandi: Wenz's Estate, supra. The indisputable aspect of these phases of Mr. Evans' testimony is that they must be dismissed and utterly eliminated because they are not corroborated. It, therefore, offends one of the most classic and cardinal safeguards contained in the Wills Act for the protection of the integrity of all testamentary instruments, viz., the two-witness rule. In Hock v. Hock, 6 S. & R. 47, cited in Sunday's Estate, 167 Pa. 30, 38, Gibson, J., said:

"Proof of execution must be made by two witnesses, each of whom must separately depose to all facts necessary to complete the chain of evidence, so that no link in it may depend on the credibility of but one. Where the evidence is positive, there can be no difficulty, for

the witnesses then attest the simple fact of execution itself; but where the evidence of one, or both, is circumstantial, each must make proof complete in itself; so that, if the Act of Assembly were out of the question, the case would be well made out by the evidence of either." See also Vol. I, Hunter's Orphans' Court Commonplace Book, p. 422, section 8(a) and authorities therein cited.

Not only was the evidence inadmissible, but it is of no weight or value. The time element is most important. The date of the alleged revocation nowhere appears in the record and it cannot, therefore, be tied in with Mr. Evans' testimony of his correspondence and conversations with testatrix all of which occurred more than four years after the execution of the will and five years before testatrix's death. The possible dates of the writing and of the correspondence and conversation are not satisfactorily connected. Therefore, the latter cannot be regarded as evidence of the date of the writing.

In passing upon the question of whether testatrix's initials constitute her signature, we are guided by the observation contained in Kimmel's Estate, 278 Pa. 435, that the requirement of signing at the end of a will was intended to designate the place of signature rather than to prescribe the character of it, the statement from Vernon v. Kirk, 30 Pa. 218, 223, that the mode of signing is left "unfettered", together with the quotation from Knox's Estate, 131 Pa. 220, wherein the court said:

"As already seen, the English and some American cases hold that a signature by initials only, or otherwise informal and short of the full name, may be a valid execution of a will or a contract, if the intent to execute is apparent."

The principal argument against the finding of the hearing judge is that the record reveals that in the

many instances of testatrix signing her name, she always wrote "Susanna Hoover Kehr" or "Susanna H. Kehr", while the only instance of her use of initials is on the writing in question. But we place greater weight upon the following factors: (1) The finding of animus revocandi heretofore made and the facts supporting it, principally that the writing appears on the carbon copy of the will; (2) the manner of the writing, its free and flowing penmanship, with the initials below and beyond the words, "null and void", and (3) the informality of the writing and the cross and other marks appearing on the carbon copy of the will. We, therefore, conclude that testatrix intended that her initials should constitute her signature.

The place in which the initials appear is at the end of the writing where the signature is required to be. There is nothing in the act of assembly which requires that the signature to a revoking writing must be at the end of the will which the writing revokes, even though that writing appears on the will itself or a copy thereof. The mandate is at the end of the revoking writing. Obviously, it can be on a completely independent paper: Bassett's Estate, supra.

This decision may frustrate testatrix's intention and result in a disinheritance of her daughter, but the result is to be laid solely at the door of testatrix. It may be attributable to her ignorance of the law or to her reluctance to again consult a lawyer. However, the damage done is negligible compared to the widespread evil which would flow from a contrary decision, a breakdown of the sanctity of testamentary instruments established by our Wills Acts.

All of the exceptions of appellant are dismissed; the exception of proponent respecting the testimony of Mr. Evans, the scrivener, is partly sustained as noted in this opinion, and proponent's exception to the finding of the hearing judge respecting the signature of tes-

tatrix is dismissed. The action of the hearing judge in dismissing appellant's appeal is, therefore, confirmed.