**[J-18-2016] [MO: Saylor, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| IN RE: ESTATE OF ISABEL WILNER, DECEASED | : | No. 136 MAP 2014 |
| | : | |
| | : | Appeal from the order of the Superior |
| | : | Court at No. 1323 MDA 2012 dated May |
| APPEAL OF: LINDA BAKER | : | 6, 2014, Reversing and Remanding the |
| | : | order of the Wyoming County Court of |
| | : | Common Pleas, Civil Division, at No. |
| | : | 2011-013 dated June 25, 2012 & filed |
| | : | June 26, 2012. |
| | : | |
| | : | ARGUED: May 6, 2015 |
| | : | RESUBMITTED: January 20, 2016 |

**CONCURRING OPINION**

**JUSTICE TODD**                                            **DECIDED: July 19, 2016**

I agree with the majority that the Probate, Estates and Fiduciaries Code does not mandate application of the rule, set forth in Hodgson's Estate,[1] that a party offering a lost will for probate must demonstrate its contents by the testimony of two witnesses. Yet, I would decline, at this juncture, to overrule Hodgson's Estate in full, but, rather, would adopt a narrow exception thereto under the circumstances of this case. On that basis, I concur in the majority's ultimate decision to remand for reinstatement of the orphans' court's order. My disagreements with the majority's analysis follow.

First, I would decline to decide whether Section 3132 of the Code applies to lost wills. See Majority Opinion at 9. As the majority ably demonstrates, Section 3132 provides that a party offering a will for probate must demonstrate its *execution* as a testamentary instrument by the testimony of two witnesses. See Majority Opinion at 9-13. Thus, Section 3132's application to lost wills is irrelevant to the issue before the

---

[1] 112 A. 778 (Pa. 1921).

Court: whether a party offering a lost will for probate must demonstrate its *contents* by the testimony of two witnesses, or whether the facts herein warrant an exception to that rule.[2]

Second, I would decline, at least at this juncture, to overrule Hodgson's Estate *in toto*. In Hodgson's Estate, the proponent of a lost will sought to demonstrate its contents by the testimony of its scrivener, and, ultimately, this Court rejected the claim. Hodgson's Estate, 112 A. at 778. First, the Court interpreted a predecessor statute to Section 3132 as mandating that a party offering a lost will for probate must demonstrate its contents by the testimony of two witnesses. Id. In the instant case, the majority holds that the Code does not mandate as much, and instead leaves the issue to the judiciary. See Majority Opinion at 13-14. Its holding in this regard is a necessary prerequisite to determining whether Appellant must satisfy the rule in Hodgson's Estate or whether the facts herein warrant dispensation from the same. Accordingly, I take no exception to the majority's decision to address this first holding of Hodgson's Estate, and, indeed, as noted supra, join its determination that the Code, contrary to Hodgson's Estate, is inapplicable herein.

However, the Court in Hodgson's Estate went on to reason that:

---

[2] Moreover, I find the majority's analysis on this point to be unpersuasive. It reasons that the General Assembly intended Section 3132 to apply to lost wills because the phrase "all wills," as used therein, "logically subsumes lost wills." Majority Opinion at 9. In my view, the majority's view that "all wills" must necessarily include lost wills does not acknowledge that the phrase must be viewed in context with the remaining provisions of the Code, which do not address lost wills, and, thus, may denote a narrower meaning excluding them from its reach. See, e.g., Meyer v. Cmty. Coll. of Beaver Cnty., 93 A.3d 806, 813 (Pa. 2014) ("[I]n giving effect to the words of the legislature, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear.") (quoting Giant Eagle, Inc. v. W.C.A.B. (Givner), 39 A.3d 287, 290 (Pa. 2012)).

[t]he two-witness rule is sound. By permitting one witness to establish the contents of a lost will, the door would be opened to intriguing and designing persons, after which misfortune must necessarily follow; and while, by such latter rule, a disappointed heir may be discouraged from destroying a will, dishonesty, fraud, and criminal wrong would be greatly encouraged. If a will, properly executed, is lost, and the one-witness rule should prevail, it would permit a scrivener to write the will after his own fashion, diverting the estate into channels never dreamed of by the testator, disinheriting heirs, and denying to those close to him throughout his life the benefit of his bounty. Where two witnesses to the contents are required, the opportunity for ingrafting bogus wills on estates, or for dishonesty in scriveners who write wills, or other fraud in connection therewith, if not made impossible, is greatly lessened.

* * *

Under this rule, when the disappointed heir destroys a will and two witnesses to prove contents are not available, the law, in such cases, writes an excellent will for the decedent, giving the estate to those by nature and by presumption nearest and dearest to the decedent. No instrument coming before the court for determination is guarded more jealously than the will of one who is no longer able to voice his wishes.

Id. at 778-79. In my view, the Court's analysis in this regard constitutes an independent judicial sanction of the rule as a legislatively-recognized and especially reliable mechanism for preventing fraud in the area of testamentary instruments. The majority implicitly dispenses with that sanction, overruling Hodgson's Estate in its entirety, and adopting a clear and convincing evidence standard in its place. See Majority Opinion at 9-15.

Respectfully, I disagree with the majority's decision in this regard, as it ignores the longstanding nature of the two-witness rule in Hodgson's Estate, and the history of the instant case, the issue framed to this Court at the allocatur stage, and the arguments posed to this Court, which focus not on whether this Court should abandon that rule, but, rather, whether it should adopt a narrow exception thereto. Specifically,

Appellant offered Decedent's lost will for probate and sought to demonstrate its contents by introducing a contemporaneously made, unsigned, copy of the will, authenticated by a disinterested attorney who drafted its terms.  After the orphans' court admitted the copy of the lost will for probate, Appellee appealed to the Superior Court, which, citing the rule in Hodgson's Estate, reversed, but indicated its view that "under the narrow circumstances of this case, an appropriate exception could be carved out."  In re Estate of Wilner, 92 A.3d at 1210.  Appellant then sought, and this Court granted, allowance of appeal to consider:

> Whether this Court should . . . overrule the rigid application of the irrebuttable "two[-]witness rule, particularly in cases where a disinterested scrivener, an officer of the [c]ourt, testifies credibly concerning the contents of the [w]ill and where based on the overwhelming evidence in the case as determined by the trier of fact application of the rule would create the very injustice that it was intended to avoid.

In re Estate of Wilner, 127 A.3d 1286 (Pa. 2014) (order).  Accordingly, Appellant argues in her brief that her case presents "narrowing circumstances" that "cry out for a narrow exception to" the rule in Hodgson's Estate, Brief of Appellant at 17-18, and, notably, never requests that we overrule that decision in its entirety.  Likewise, Appellee merely argues that the rule is a creature of statute and is mandatory, and does not address whether it is wise to abandon it, even in part.  Finally, and perhaps most disquieting, the Commonwealth as *parens patriae* takes no official position on whether an exception to the rule in Hodgson's Estate should be adopted, but urges this Court to proceed with the utmost caution if it chooses to adopt one, as the rule is longstanding and any exception thereto might easily engulf the rule in time.  Given its longstanding character, the Commonwealth's concerns, and, particularly in the absence of arguments vis-à-vis the continued vitality of the rule in Hodgson's Estate as a general matter, I would take the course charted for us by the parties and the courts below:  determining whether an

exception to the rule in Hodgson's Estate should be crafted for cases such as the one herein.

Turning to that task, I would simply hold that the rationale in Hodgson's Estate is inapplicable where, as here, the will's execution is proved by two witnesses and an alleged conformed copy of the will is authenticated by a disinterested attorney who drafted the will. Indeed, the role of a disinterested attorney who himself drafted the will is a critical element not contemplated in our prior opinions addressing lost wills. Keeping in mind an attorney's duty of loyalty to his client, his duty as an officer of the court to be candid in its proceedings, as well as the ethical rules governing attorneys drafting wills benefiting themselves or their family members, see Pa. R. Prof'l Conduct 1.7 (prohibiting conflicts of interest); Pa. R. Prof'l Conduct 3.3 (requiring candor to the courts); Pa. R. Prof'l Conduct 1.8 (prohibiting an attorney from "prepar[ing] on behalf of a client an instrument giving the lawyer or a person related to the lawyer any substantial gift unless the lawyer or other recipient of the gift is related to the client"), I believe the special circumstances attendant in this case — the existence of a contemporaneously-made conformed copy, as well as the special reliability of such a witness — together with the traditional credibility-determining function of the orphans' court, to be sufficient to reasonably dispel concerns of fraud. As such, I would simply adopt an exception to the rule in Hodgson's Estate under these limited circumstances, and, on that basis, reverse and remand to the Superior Court for reinstatement of the orphans' court's order admitting Decedent's will to probate. I would thus leave the question of Hodgson's Estate's continued vitality for another day, when it has been fairly raised by the parties, passed upon by the courts below, and adequately briefed before this Court.

Third, and finally, assuming *arguendo* that we should reach the issue, I disagree with the majority's replacement of the rule in Hodgson's Estate with a clear and

convincing evidence standard. In arriving at its choice in this regard, the majority notes that the rule in Hodgson's Estate runs the risk of frustrating a testator's wishes, and, in its view, unnecessarily so, because the orphans' court can appropriately weigh testimony and avoid rewarding fraud. See Majority Opinion at 14. The majority then notes that other jurisdictions have adopted statutes permitting a party offering a lost will for probate to demonstrate its contents by clear and convincing evidence, and concludes the same "represents an appropriate standard of proof." Id. at 15.

As an initial matter, I am unpersuaded by the majority's rationale for adopting this standard. Although the majority correctly points out that the decision in Hodgson's Estate, in an effort to avoid fraud, gave insufficient weight to the risk that the testator's wishes will not be fulfilled, it does not follow that the mere credibility function of an orphans' court is sufficient to avoid such fraud. Moreover, although the majority notes that other jurisdictions have legislatively abandoned the two-witness rule in favor of a clear and convincing evidence standard, it nonetheless cites to jurisdictions which have adopted other, more solicitous rules, see Majority Opinion at 15, n.10 (noting that other jurisdictions have required "either two witnesses or one witness plus a copy of the will" and that yet others "allow a copy of the will to be introduced and either provide that the copy suffices so long as it is proved to be complete"), and does not explain why its clear and convincing evidence standard is chief among these listed rivals.

Furthermore, in my view, the majority's adoption of the clear and convincing evidence standard gives insufficient weight to longstanding and compelling legislative judgments that especially reliable types of evidence are necessary to provide certainty and prevent fraud in the area of testamentary bequests. Since long before the American Revolution, this Commonwealth has required that a will be written, providing proof-positive evidence of its terms. See Wills Act of 1705, 1 Sm.L. 33 § 1 (providing

that all wills that are "in writing" and otherwise formally sufficient "shall be good and available in law"); Wills Act of 1833, P.L. 249, § 6 (providing that "every will shall be in writing . . . otherwise such will shall be of no effect"); Wills Act of 1917, P.L. 405, § 2; Wills Act of 1947, P.L. § 2; 20 Pa.C.S. § 2502 ("Every will shall be in writing . . . subject to . . . rules and exceptions [not implicated herein]."). Although we obviously cannot require a party offering a lost will for probate to demonstrate its contents by providing the will itself, we can respect the foregoing legislative judgments in large measure by requiring a copy of the substance of the will authenticated by a disinterested attorney who drafted its terms, or under similarly especially reliable circumstances. Doing so would be as consistent as possible, in the context of lost wills, with the longstanding writing requirement for wills, as it would rely in part on the existence of a writing representing the best evidence available as to the will's terms, authenticated by a person with a professional duty to be truthful on the matter. Indeed, given the aforementioned duties of an attorney, his testimony would appear sufficient to ameliorate the risk of fraud caused by the loss of an original will.[3]

In addition, I fear the majority's decision today runs the risk of overcorrecting the possible errors of Hodgson's Estate by opening the door too wide to potential fraud by would-be testamentary beneficiaries. Although the majority rightly explains that the clear and convincing evidence standard "requires evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue," Majority Opinion at 15 (quoting Commonwealth v. Maldonado, 838 A.2d 71, 715 (Pa. 2003)), it may quizzically

---

[3] Accord Del Rossi's Estate, 23 Pa. D. & C.4th 218 (Ct. Com. Pl. Montgomery Cnty. 1995) (probating a copy of a signed will authenticated by its disinterested drafting attorney).

permit probate on the basis of significantly weaker evidence than the legislature has cognized for more reliable, available wills. Put simply, a single witness (or even a single hearsay statement), persuasive to a finder of fact, might well be sufficient to dispose of a decedent's property, and be shielded by our deferential standard of review. In light of the foregoing, I believe the majority's efforts to ameliorate the ills caused by the rule in Hodgson's Estate give rise to their own significant policy concerns.